UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 24-12650-CC

_____

HUBERT ARTURO ACEVEDO,
PLAINTIFF/APPELLEE,

v.

ALEX DIAZ DE LA PORTILLA, JOE CAROLLO,
ARTHUR NORIEGA, AND
MANOLO REYES,
DEFENDANTS/APPELLANTS.

_____

ON NON-FINAL APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
OF FLORIDA.
HON. KATHLEEN M. WILLIAMS, DISTRICT JUDGE

_____

**INITIAL BRIEF OF APPELLANT ARTHUR NORIEGA**
_____

MASON A. PERTNOY
KRINZMAN HUSS LUBETSKY FELDMAN
   & HOTTE | AWERBACH COHN PEREZ
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, FL 33131
Telephone: (305) 854-9700
Facsimile:  (305) 854-0508
E-mail: map@khllaw.com
*Counsel for Appellant, ARTHUR NORIEGA*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1, appellant certifies the following persons and entities may have an interest in this case:

Hubert Arturo Acevedo

Linette M. Aguirre

John R. Byrne

Bryan E. Capdevila

Heaven Chee

Joe Carollo

City of Miami, Florida

Michael T. Davis

Alex Diaz de la Portilla

Johan Dos Santos

Hon. Donald L. Graham. Senior U.S. District Judge

Marcos D. Jimenez

Kevin R. Jones

Kozyak Tropin & Throckmorton, P.A.

Krinzman Huss Lubetsky Feldman & Hotte

Benedict P. Kuehne

Kuehne Davis Law, P.A.

Leon Cosgrove Jimenez, LLP

Sam T. Linn

Javier A. Lopez

Michael R. Lorigas

Chris M. McAliley, U.S. Magistrate Judge (Retired)

Maderal Byrne PLLC

Miami City Attorney's Office

Jordi CarloSantiago Martinez-Cid

Kerri L. McNulty (Deceased)

Arthur Noriega

Stephanie K. Panoff

Mason A. Pertnoy

Jose M. Quiñon

Jose M. Quiñon, P.A.

Frank Quintero, Jr.

Quintero Broche & Fonseca-Nader, P.A.

Manolo Reyes

Thomas A. Tucker Ronzetti

Hon. Edwin G. Torres, Chief U.S. Magistrate Judge

Tucker Ronzetti, P.A.

Hon. Kathleen M. Williams, U.S. District Judge

Vedder Price, P.C.

George K. Wysong

**Statement as to Corporate Ownership:**

Appellants Alex Diaz de la Portilla, Manolo Reyes, Joe Carollo, and Arthur Noriega are individuals. Appellee Hubert Arturo Acevedo is an individual.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This is a civil-rights case by a former chief of police claiming retaliation for alleged First Amendment protected speech. First Amendment issues are difficult. *See, e.g.*, *Wollschlager v. Governor, State of Fla.*, 843 F.3d 1293, 1300 (11th Cir. 2017) ("Despite its majestic brevity—or maybe because of it—the freedom of speech clause of the First Amendment sometimes proves difficult to apply."). Qualified immunity further compounds the complexity here. Appellant Noriega respectfully requests oral argument to assist in the clarification of the issues.

# TABLE OF CONTENTS

STATEMENT OF ADOPTION OF BRIEFS BY OTHER PARTIES ……….……1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION …2

STATEMENT OF THE ISSUES …………………………………………………..2

STATEMENT OF THE CASE …………………………………………………….3

Statement of the Facts………………………………………………………..…3

Course of Proceedings and Dispositions Below……………………………….3

Statement of the Standard or Scope of Review………………………………...4

SUMMARY OF THE ARGUMENT……………………………………………….4

ARGUMENT………………………………………………………….…..…6

Noriega was not the final decisionmaker as to termination ……..………………7

The district court's "robust consensus" analysis was flawed as to Noriega…………8

The district court's reliance on *Carollo*, *Akins* and *Walker* to establish
    a robust consensus was misplaced...……………………………...……………13

Acevedo failed to plausibly allege Noriega had fair warning………..…………..20

The burden was on Acevedo to rebut the presumption of qualified immunity…….23

NOTICE OF ADOPTION BY REFERENCE…………………………………..23

CONCLUSION………………………………………………………………...23

CERTIFICATE OF COMPLIANCE…………………………….…………………24

CERTIFICATE OF SERVICE…………………………………..……………..…25

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Akins v. Fulton County*,
        420 F.3d 1293 (11th Cir. 2005)………………….…………13, 16-18

*Ashcroft v. al-Kidd*,
        563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)………………...8

*Bates v. Hunt*,
        3 F.3d 374 (11th Cir. 1993)…………………………………….…21

*Bell v. Sheriff of Broward Cty.*,
        6 F.4th 1374 (11th Cir. 2021)………………………….………….12

*Brosseau v. Haugen*,
        543 U. S. 194, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)………………….8

*Bryan v. Landis*,
        106 Fla. 19, 142 So. 650, 653 (Fla. 1932) ………….……..……7, 8, 17, 19

*Carollo v. Boria*,
        833 F.3d 1322 (11th Cir. 2016) ………………….…..…………….13-16

*Echols v. Lawton*,
        913 F.3d 1313 (11th Cir. 2019)……………………………………….8

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
        500 F.3d 1276 (11th Cir. 2007)…………………………………..4

*Garcetti v. Ceballos*,
        547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) …………... 13, 16

*Hinson v. Bias*,
        927 F.3d 1103 (11th Cir. 2019)……………………………………….23

*Kamensky v. Dean*,
        148 Fed. Appx. 878 (11th Cir. 2005)………………………………8, 11

*King v. Bd. of Cty. Commissioners*,
    2018 U.S. Dist. LEXIS 10413, 2018 WL 515350 (M.D. Fla. 2018) ….19, 22

*Lassiter v. Ala. A & M Univ., Bd. of Trs.*,
    28 F.3d 1146 (11th Cir. 1994)……………………………………..…8

*Loftus v. Clark-Moore*,
    690 F.3d 1200 (11th Cir. 2012)…………………………………….8

*Martin v. Baugh*,
    141 F.3d 1417 (11th Cir. 1998)………………………….…………7

*Perez v. City of Opa-Locka*,
    629 F. Supp. 3d 1164 (S.D. Fla. 2022)……………………………..21

*Pickering v. Board of Education*,
    391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968) …………….*passim*

*Shahar v. Bowers*,
    114 F.3d 1097 (11th Cir. 1997)………………………………………22

*Speaker v. U.S. HHS CDC & Prevention*,
    623 F.3d 1371 (11th Cir. 2010)……………………………………..4

*Walker v. Schwalbe*,
    112 F.3d 1127 (11th Cir.1997)……………………………….…13, 18-19

**Other Authorities**

11th Cir. Rule 28-1(f)………………………….……………………1-4, 23

42 U.S.C. § 1983……………………………………………………3, 8, 11

Rule 28(i), Fed. R. App. P……………………………….…………1-4, .23

Rule 32(a), Fed. R. App. P………………………….…………………24

City of Miami Charter, § 24………………………………………….21

City of Miami Charter, § 26……………………………………*passim*

## <u>STATEMENT OF ADOPTION OF BRIEFS BY OTHER PARTIES</u>

Pursuant to Rule 28(i), Fed. R. App. P., and 11th Cir. Rule 28-1(f), Appellant Noriega adopts by reference in full the following specific portions of Appellants, City of Miami Commissioners, Alex Diaz de la Portilla, Joe Carollo, and Manolo Reyes' (the "Commissioners") Initial Brief (the "Commissioners' Initial Brief"), as set forth herein:

Statement of Subject Matter and Appellate Jurisdiction section on page 1;

Statement of the Issues section on pages 2-3;

Statement of the Facts section on pages 4-18;

Course of Proceedings and Dispositions Below section on pages 18-19;

Statement of the Standard or Scope of Review section on page 19; and

Section I. of the Argument section at pages 25-41 of the Commissioners' Initial Brief entitled "Acevedo's Memorandum Is Not Constitutionally Protected".

## STATEMENT OF
## SUBJECT MATTER AND APPELLATE JURISDICTION

Pursuant to Rule 28(i), Fed. R. App. P., and 11th Cir. R. 28-1(f), City Manager Noriega adopts by reference the Statement of Subject Matter and Appellate Jurisdiction section at page 1 of the Commissioners' Initial Brief.

## STATEMENT OF THE ISSUES

Pursuant to Rule 28(i), Fed. R. App. P., and 11th Cir. R. 28-1(f), City Manager Noriega adopts by reference the Statement of the Issues section at pages 2-3 of the Commissioners' Initial Brief.

Additionally, City Manager Noriega identifies the following issue presented for review as to the district court's denial of his motion to dismiss.

8.     Whether the city manager is entitled to qualified immunity dismissal of the police chief's First Amendment retaliation complaint when the city manager acted solely in his discretionary role as a public servant, and the city manager was not on notice that his official conduct, temporary suspension with pay of the police chief pending the City Commission's final decision as to any termination of the police chief, violated a clearly established right.

**STATEMENT OF THE CASE**

Appellee, Hubert Arturo Acevedo ("Acevedo") claims a civil rights violation under 42 U.S.C. § 1983, asserting one count (Count II)[1] against the City of Miami and the Commissioners and the City Manager, individually, for First Amendment retaliation. *See* Doc. 1 at 36-35, ¶¶ 251-312.[2] Acevedo alleges his First Amendment rights were violated when he was terminated by a unanimous vote of the City Commission, including two Commissioners not named as defendants, in retaliation for sending a memorandum accusing the three Commissioners sued herein of engaging in conduct that interfered with police department operations.

**i.   Statement of the Facts.**

Pursuant to Rule 28(i), Fed. R. App. P., and 11th Cir. Rule 28-1(f), Appellant Noriega adopts by reference the Statement of the Facts section at pages 4-18 of the Commissioners' Initial Brief.

**ii.   Course of Proceedings and Dispositions Below.**

Pursuant to Rule 28(i), Fed. R. App. P., and 11th Cir. Rule 28-1(f), Appellant Noriega adopts by reference the Course of Proceedings and Dispositions Below section at pages 18-19 of the Commissioners' Initial Brief.

---

[1] The Complaint's remaining count (Count I) is a state-law statutory whistleblower claim against the City of Miami.

[2] Record references "Doc." are to the document number of the district court clerk's docket, and where applicable, "at" and then the specific page number of the document, also with paragraph numbers given for citations to the Complaint.

###### iii.    <u>Statement of the Standard or Scope of Review.</u>

Pursuant to Rule 28(i), Fed. R. App. P., and 11th Cir. Rule 28-1(f), Appellant Noriega adopts by reference the Statement of the Standard or Scope of Review section at page 19 of the Commissioners' Initial Brief.

## <u>SUMMARY OF THE ARGUMENT</u>

Acevedo claims First Amendment retaliation for his termination as the Chief of Police. In connection with Acevedo's claim, he asserts that Noriega exercised his discretionary power to suspend the Chief of Police which subsequently led the City Commission to vote unanimously 5-0 to terminate Acevedo. Noriega was not the final decisionmaker as to Acevedo's termination. *See* Doc. 1 at 30, ¶ 226.

Acevedo contends that the justifications Noriega provided for suspending him in the Suspension Memorandum (Doc. 23-2), incompetence, neglect of duty, and failure to obey orders, among other reasons, were pretextual. *See* Doc. 1 at 28, 41, ¶¶ 213, 284.[3] Acevedo fails to allege any facts to rebut these grounds for suspension. However, Acevedo concludes that Noriega's decision to suspend him with pay was

---

[3] Although courts generally only consider the complaint in deciding a Rule 12(b)(6) motion to dismiss, a district court may consider an extrinsic document if it is central to the plaintiff's claim, and its authenticity is not challenged. *Speaker v. U.S. HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). The court may also consider a document when a plaintiff refers to it in the complaint, it is central to the claim, its contents are not in dispute, and the defendant attaches it to the motion. *See Fin. Sec. Assur., Inc. v. Stephens, Inc*., 500 F.3d 1276, 1284 (11th Cir. 2007). Here, Acevedo refers to his Memorandum (Doc. 25-1) and the Suspension Memorandum (Doc. 23-2) throughout the Complaint. *See, e.g.*, Doc. 1 at 23, 28, ¶¶ 177, 212.

an expression of the Commissioners' will to retaliate against him for reporting to the Mayor and the City Manager alleged interference by the Commissioners with Miami Police Department operations as set forth in Acevedo's official City of Miami Memorandum (the "Memorandum") (Doc. 25-1). *See* Doc. 1 at 28, ¶¶ 213-215.

On its face, Acevedo's Memorandum has all the hallmarks of a policy-level communication between the heads of the highest spheres of power in the City of Miami government. *See* Doc. 25-1. To open the door to sue Noriega individually, Acevedo rebrands the Memorandum as a whistleblower complaint sent by a private citizen. To get the label to stick, Acevedo contends he was precluded from officially sharing his allegations with investigative authorities by a City of Miami resolution directing the City Manager to "forward any and all pending criminal investigations" of elected City officials to the Florida Department of Law Enforcement and/or the FBI. *See* Doc. 1 at 5, ¶¶ 29-33. Acevedo never contends, however, that the Memorandum was a "pending criminal investigation."

From this platform, Acevedo has launched a First Amendment retaliation claim against Noriega and the Commissioners for his termination. The failure to appreciate the difference between Noriega's decision to initially *suspend* Acevedo with pay and the Commission's unanimous vote to *terminate* Acevedo's employment as mandated by Section 26 of the City Charter is critical to the district court's error as to Noriega's entitlement to qualified immunity.

In the Order denying Noriega's Motion to Dismiss, the district court inaccurately attributes the allegations involving the Commissioners to Noriega in the qualified immunity analysis. However, Noriega is an executive branch officer with fundamentally different authority than the legislative branch Commissioners. Referring collectively to the "individual Defendants," the district court found that, "Plaintiff has sufficiently pled that he was **terminated** in retaliation." *See* Doc. 75 at 30 (emphasis added). Noriega was not the final decisionmaker as to the termination. In fact, Noriega was not empowered to and did not vote to terminate Acevedo. As such, the district court's qualified immunity analysis is incomplete as to Noriega and a separate analysis was required.

Had the district court conducted the necessary complete and separate analysis as to Noriega, taking into account his state of mind as City Manager exercising his discretion to suspend Acevedo, the qualified immunity analysis would have found that there is no robust consensus establishing fair warning to Noriega that temporarily suspending Acevedo with pay subject to an evidentiary hearing and a vote by the full Commission would violate his First Amendment right to free speech.

## ARGUMENT

The district court erred when it failed to conduct a complete and separate qualified immunity analysis of Noriega's decision to initially suspend Acevedo with pay under the circumstances. Had it done so, the district court would have found that

no reasonable government employee would have been on notice that temporarily suspending Acevedo with pay based on the facts outlined in the Suspension Memorandum would have violated Acevedo's limited First Amendment rights.

Indeed, the district court's finding that the *Pickering v. Bd. of Ed.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), balance is in Acevedo's favor "at this stage" (*see* Doc. 75 at 24) concedes intensely factual legal determinations do not lend themselves to clear, bright-line rules. Because the analysis of First Amendment retaliation claims under the *Pickering* test "involves legal determinations that are intensely fact-specific and do not lend themselves to clear, bright-line rules … a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful." *Martin v. Baugh*, 141 F.3d 1417, 1420 (11th Cir. 1998).

## Noriega was not the final decisionmaker as to termination.

Pursuant to the plain language of City Charter section 26, the Commission, not the City Manager, is the final decisionmaker as to termination of the police chief. *See* City Charter, § 26; *Bryan v. Landis*, 106 Fla. 19, 142 So. 650, 653 (Fla. 1932). Under the Charter, Noriega merely has the ability to temporarily suspend, subject to immediate determination by the Commission. *Id.* Whether the initial suspension shall lead to termination rests solely with the Commission's final decision. *Id.*

Acevedo's claim for First Amendment retaliation for termination fails against Noriega because Noriega was not the final decisionmaker. *See* City Charter, § 26;

*Bryan*, 142 So. at 653. The Charter is clear that Noriega had authority only to initially suspend Acevedo, and only the full Commission had the authority to terminate Acevedo. *Id.* Here, the full Commission voted unanimously to terminate Acevedo. *See* Doc. 1 at 30, ¶ 226. As required by prevailing precedent, only the final decisionmaker may be held liable for First Amendment retaliation under § 1983, and Noriega was not the final decisionmaker. *See* Doc. 25 at 2 (citing *Kamensky v. Dean*, 148 Fed. Appx. 878, 879 (11th Cir. 2005)).

**The district court's "robust consensus" analysis was flawed as to Noriega.**

There is no individual case or set of cases establishing a robust consensus that would place Noriega's decision to initially suspend Acevedo with pay, subject to an evidentiary hearing and vote by the full city commission, "beyond debate." *Echols v. Lawton*, 913 F.3d 1313, 1324 (11th Cir. 2019).[4]

---

[4] If plaintiff relies on binding opinions to confront an official's qualified immunity, the question is whether existing law provides fair warning and notice "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004). When considering if the law applicable to the facts is clearly established, the facts of the cases relied upon need to be materially similar to the case at issue. *Lassiter v. Ala. A & M Univ., Bd. of Trs.*, 28 F.3d 1146, 1150 (11th Cir. 1994). The Supreme Court has repeatedly cautioned courts not to define clearly established law "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011); *Echols*, 913 F.3d at 1324 ("We consider the official's conduct in the specific context of the case, not as broad general propositions."). The emphasis on comparability requires courts to consider "whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012).

No court has conducted a qualified immunity analysis of a city manager's decision to temporarily suspend a police chief pending an evidentiary hearing and determination by the Commission, justified by a memorandum containing eight individualized and fact-supported grounds for the suspension, none of which bear any relationship with the communication that the plaintiff contends was the basis for his suspension. Based on these ***case-specific*** circumstances, Noriega was not on notice that his exercise of his discretionary powers to temporarily suspend Acevedo with pay would violate the Chief's First Amendment right to free speech.

In the absence of comparable case law, the district court ignored the specific pre-suspension context posed in this case as to Noriega, and instead considered the Commissioners' vote to ***terminate*** Acevedo, finding that "the individual Defendants" (including Noriega) had fair warning that "their conduct" was unlawful. *See* Doc. 75 at 29 ("The Court finds that there was case law materially similar to the current case that provided fair warning to the individual Defendants that their conduct was unlawful."). The district court explained that the "conduct" at issue, ***termination***, was in retaliation for Acevedo allegedly reporting "violations of state a federal law to local and federal agencies, including the use of MPD resources to carry out personal vendettas against constituents for exercising their constitutional rights, and Plaintiff has sufficiently pled that he was terminated in retaliation." *Id.*

The district court needed to conduct a separate and complete qualified

immunity analysis as to Noriega and instead lumped him together with the Commissioners despite their distinct roles and authority. The court's analysis suffers from two fatal flaws as set forth herein.

**a. There is no robust consensus establishing that Noriega had fair warning that his temporary suspension of Acevedo with pay, subject to an evidentiary hearing and a determination by the full Commission on whether to terminate, would violate Acevedo's free speech rights.**

First, the conduct at issue, suspension as opposed to termination, is not an insignificant detail. To the contrary, suspension is the only operative action taken by Noriega involving Acevedo's role as police chief asserted in the complaint. *See* Doc. 1 at 28, ¶ 212. Indeed, pursuant to the Charter, Noriega has no authority to terminate Acevedo. *See* City Charter, § 26. Accordingly, to overcome Noriega's qualified immunity, the district court was required to focus on the case-specific circumstances involving Noriega, apart from the separate conduct alleged as to the Commission. In that context, the district court needed to identify a robust consensus of case law establishing that a reasonable public official (Noriega) had fair warning that his temporary *suspension* of a police chief (Acevedo) with pay, subject to an evidentiary hearing and a commission vote, would violate the police chief's free speech rights.

The district court acknowledged Noriega was not the final decisionmaker as to Acevedo's termination. *See* Doc. 75 at 32. Pursuant to the plain language of City Charter section 26, the Commission, not the City Manager, is the final decisionmaker as to termination. *See* City Charter, § 26. Under the Charter, Noriega

merely has the ability to temporarily suspend, subject to immediate determination by the Commission. *Id.* Accordingly, the district court erred in failing to identify a robust consensus establishing fair warning to Noriega that temporarily suspending Acevedo with pay subject to an evidentiary hearing and a vote by the full Commission would violate Acevedo's First Amendment right to free speech.

**b. The district court failed to account for the lack of retaliatory animus and the lack of adverse employment action relating to the temporary suspension with pay.**

Second, the district court compounded its error by attributing the alleged animus for retaliation (anger at Acevedo for reporting corruption to law enforcement agencies via his Memorandum) to Noriega. *See* Doc. 75 at 29-30. However, the alleged violations in Acevedo's Memorandum were directed to the Commissioners not Noriega. *See* Doc 25-1.

The district court's failure to conduct a complete and separate qualified immunity analysis as to Noriega is further compounded by the court giving short shrift to the fact that Acevedo's temporary suspension with pay does not constitute an adverse employment action. *See* Doc. 75 at 32-33. As set forth in Noriega's motion to dismiss, only the final decisionmaker may be held liable for First Amendment retaliation under § 1983, and Noriega was not the final decisionmaker as to termination, the only such cause of action pleaded. *See* Doc. 25 at 2 (citing *Kamensky*, 148 Fed. Appx. at 879). As set forth in the individual defendants'

- 11 -

consolidated reply, in response to Noriega's motion, Acevedo pivoted to the argument that Noriega was the final decisionmaker as to the four-day suspension with pay. *See* Doc. 54 at 3, 28. The district court stated that Noriega did not argue the lack of adverse employment action in his motion. *See* Doc. 75 at 33. However, the lack of adverse employment action as to the suspension was argued in the reply based on Acevedo's concession in his response that Noriega was not the final decisionmaker with respect to Acevedo's termination. *See* Doc 38 at 18.

As set forth in the individual defendants' reply, the Eleventh Circuit has held that a five-day suspension with pay pending an investigation is not an adverse action for purposes of a First Amendment retaliation claim, and in this case, the initial suspension with pay was four days. *See* Doc 54 at 28, n.4 (citing *Bell v. Sheriff of Broward Cty.*, 6 F.4th 1374, 1379 (11th Cir. 2021)). The district court distinguished *Bell* based on consideration of all employment actions collectively, including termination, not just the temporary suspension with pay. *See* Doc. 75 at 33. However, Noriega was not the final decisionmaker as to the termination. *See* City Charter, § 26. The fact that Acevedo's four-day suspension with pay was not an adverse employment action is further support for the point that if the district court would have conducted a separate and complete qualified immunity analysis as to Noriega it would have found there is no robust consensus establishing fair warning to Noriega that temporarily suspending Acevedo with pay subject to an evidentiary hearing and

- 12 -

a determination by the Commission would violate Acevedo's free speech rights.

**The district court's reliance on *Carollo, Akins* and *Walker* to establish a robust consensus was misplaced**.

Acevedo invited the Court to analyze whether Noriega had fair warning that his suspension of the Chief of Police would violate the Chief's free speech rights by pointing to a "robust consensus" established by general principles of law announced in *Pickering* and *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006), and materially similar case law in the form of *Carollo v. Boria*, 833 F.3d 1322 (11th Cir. 2016), *Akins v. Fulton County*, 420 F.3d 1293 (11th Cir. 2005), and *Walker v. Schwalbe*, 112 F.3d 1127 (11th Cir.1997). *See* Doc. 38 at 16-17. Those cases, however, are not comparable.

The district court erroneously rooted its robust consensus finding in *Carollo*, and two summary judgment cases that were part of the robust consensus relied on by *Carollo*, *Akins* and *Walker*. *See* Doc. 75 at 30. As set forth herein, *Carollo*, *Akins*, and *Walker* are materially distinguishable and did not provide fair warning to Noriega under the specific facts here. Moreover, in each case, the employees' speech was clearly outside their official duties, was made for a public purpose, and did not involve raising issues of management interference with superiors as here.

### a. The *Carollo* case is distinguishable and unavailing as to Noriega.

The *Carollo* case is distinguishable in that the retaliatory act was termination, not temporary suspension with pay pending an evidentiary hearing and vote of the

full Commission on whether to terminate. *See* Doc. 75 at 29-30. Accordingly, the *Carollo* case is inapposite to the analysis of Noriega's discretionary decision to temporarily suspend Acevedo with pay pending the full Commission's decision on termination. Because the *Carollo* case deals strictly with a vote by the members of the city council to **terminate** the city manager in direct response to his protected speech, it is inapplicable to Noriega's decision to **initiate** a **temporary paid suspension** of Acevedo pending a hearing and judgment by the full Commission at a publicly noticed meeting. This is especially true since Noriega's temporary suspension of Acevedo was accompanied by a fact-specific findings identified in the Suspension Memorandum that were not rebutted by Acevedo, justifying Noriega's loss of confidence in Acevedo's ability to "properly perform" his duties "as the Chief of Police." *See* Doc. 23-2 at 1. Noriega's discretionary decision to initiate the suspension of Acevedo was objectively (1) with pay, (2) temporally limited, (3) subject to due process protections, and (4) to be independently reviewed by the full Commission at a publicly noticed meeting. *See* City Charter, § 26.

Unlike the situation in *Carollo*, Acevedo was afforded the opportunity to meet these grounds of no-confidence for his suspension at a public hearing in the sunshine. *See* City Charter, § 26. Pursuant to the City Charter, the Commission was assigned the responsibility to notice and conduct that hearing and render judgment on the charges "within five (5) days" from receipt of the notice of suspension. *Id.* Noriega

was not the final decision-maker regarding Acevedo's termination. *Id.* The termination decision was the responsibility of the entire Commission to hear the evidence and "render judgment thereon." *Id.* The Commission unanimously voted to terminate Acevedo. *See* Doc. 1 at 30, ¶ 226.

The *Carollo* case is also distinguishable because it involved a direct relationship between the retaliatory conduct (termination) and the protected speech. In *Carollo*, 833 F.3d at 1326, the defendant council members voted to terminate the city manager (Carollo) without any justification other than his exercise of protected speech. Carollo was never suspended. The court drew a direct line between the protected speech and the termination. *Id*. at 1334 (emphasis added) ("reasonable public officials would have known at the time of Carollo's termination that it violated the First Amendment to terminate a colleague **for** speaking about matters of public concern that are outside the scope of his ordinary job responsibilities.").

The appellant council members in *Carollo* argued that the district court erred in relying on *Pickering* as the root of fair warning because "prior decisions applying its balancing test… often find against First Amendment protection." *Carollo*, 833 F.3d at 1334. As the *Carollo* court explained, application of the *Pickering* balancing test (whether the employer "had an adequate justification for treating the employee differently from any other member of the general public") was unnecessary in that case because the council members did "not advance an argument that they had an

adequate justification for terminating Carollo, only that Carollo spoke pursuant to his official job responsibilities." *Id.* Based on that key distinction, the *Carollo* court concluded that *Pickering* and *Garcetti* provide "reasonable public officials fair warning that it violates the First Amendment to terminate a colleague in retaliation for speaking about matters of public concern that are outside the scope of his ordinary job responsibilities." *Id.*

The district court here drew the same direct line between the speech and the termination in concluding "the individual Defendants" had "fair warning" that terminating Acevedo "in retaliation" for the Memorandum violated his right to free speech. *See* Doc. 75 at 29-30. The court did not separately apply the *Carollo* case to Noriega's decision to temporarily suspend Acevedo with pay, ignoring that Noriega was not authorized to and did not vote on the Commission's termination decision. *See* City Charter, § 26.

### b. The *Akins* case is distinguishable and unavailing as to Noriega.

The *Akins* case is distinguishable because the retaliatory action was constructive discharge, not temporary suspension with pay pending an evidentiary hearing and vote of the full Commission on whether to terminate. In *Akins*, public employees alleged their supervisor subjected them to adverse employment actions after they met with a commissioner to report irregularities in bidding and contracting process. The court held it was error to grant the supervisor qualified immunity on

the grounds that the law regarding constructive discharge and protected speech was not clearly established. *Akins*, 420 F.3d at 1297. Acevedo's claim is for First Amendment retaliation for termination, not constructive discharge. Under the Charter, Noriega merely has the ability to temporarily suspend, subject to immediate determination by the Commission, and whether the initial suspension shall lead to termination rests solely with the Commission's final decision. *See* City Charter, § 26; *Bryan*, 142 So. at 653.

The court held the supervisor had "fair warning" "that speech whose 'main thrust' is to report bidding irregularities to a public official in a meeting requested for that purpose is protected by the First Amendment." *Akins*, 420 F.3d at 1308 (citation omitted). That is the aspect of the *Akins* case relied on by the district court to support its conclusion that Acevedo "has sufficiently pled that he was terminated in retaliation." *See* Doc. 75 at 30. However, the facts of *Akins* do not provide fair warning to Noriega that a four-day suspension with pay of Acevedo based on the reasons set forth in the Suspension Memorandum (Doc. 23-2), subject to an evidentiary hearing and determination by the full Commission, would violate Acevedo's free speech rights.

Moreover, in *Akins*, 420 F.3d at 1302, the supervisor's actions were weighed collectively to determine whether the employees met the threshold for a constructive discharge theory. Here, Noriega took one action, a short-term suspension with pay,

- 17 -

pending an evidentiary hearing and a determination by the full Commission as to whether to terminate Acevedo, and Noriega provided the reasons for the temporary action in the Suspension Memorandum (Doc. 23-2). Although Acevedo has made conclusory allegations that Noriega's reasons are pretextual (*see* Doc. 1 at 28, 41, ¶¶ 213, 284), there was no such pretextual analysis at issue in *Akins*.

Accordingly, the district court's consideration of *Akins* as part of the "robust consensus" is unavailing. *See* Doc. 75 at 30.

### c.   The *Walker* case is distinguishable and unavailing as to Noriega.

*Walker* is distinguishable in that the retaliatory action was demotion, not temporary suspension with pay pending an evidentiary hearing and vote of the full Commission on whether to terminate. In *Walker*, 112 F.3d at 1130, the plaintiff-employee expressed concerns to state legislators about budget improprieties in his government-funded organization. The state investigated and issued a negative report. The plaintiff was demoted and filed a First Amendment retaliation claim.

The *Walker* case is further distinguishable because in denying summary judgment, the court concluded, "[b]ecause Walker has established a genuine issue of material fact as to retaliation, it must be assumed at this stage that the defendants did retaliate against him for his speech." *Walker*, 112 F.3d at 1133. Given the assumption of retaliatory motivation, the court's qualified immunity analysis did not include a *Pickering* balance test. In this case, the district court did not have

allegations warranting an assumption of retaliatory animus for the termination, since Noriega merely has the ability to temporarily suspend, and whether the initial suspension shall lead to termination rests solely with the Commission's final decision. *See* City Charter, § 26; *Bryan*, 142 So. at 653. Instead, the district court was obligated to conduct a *Pickering* analysis based on Noriega's conduct, as informed by the Suspension Memorandum (Doc. 23-2). Because the district court's order fails to address Noriega's written grounds for the temporary paid suspension (not termination) of Acevedo, *Walker* does not provide Noriega with fair warning.

Considering the factual circumstances unique to this matter, Eleventh Circuit precedent did not provide fair warning to Noriega that temporarily suspending Acevedo with pay subject to an evidentiary hearing and a vote by five (5) Commissioners on whether to terminate would violate Acevedo's free speech right. In addition, this Court cannot conclude under the *Pickering* balancing in this case involving a police department, that the balance was so strongly in favor of the employee's speech that Noriega could have known his conduct constituted unlawful retaliation. *See King v. Bd. of Cty. Commissioners*, 2018 U.S. Dist. LEXIS 10413, 2018 WL 515350, at *4 (M.D. Fla. 2018) (even when clearly established law showed plaintiff's speech was citizen speech on a matter of public concern, it was not clearly established that the *Pickering* balancing test would weigh in the plaintiff's favor), *aff'd*, 916 F.3d 1339 (11th Cir. 2019).

Because this required fact-specific analysis is not present in this record, Acevedo has not met his difficult burden to overcome Noriega's qualified immunity in the First Amendment context.

**Acevedo failed to plausibly allege Noriega had fair warning.**

Any evaluation of Noriega's qualified immunity defense necessarily entails engagement in a fair warning analysis through the eyes of a reasonable city official under *Pickering*, requiring the court to weigh the employee's free speech interest against the employer's interest in promoting the efficiency of the public services he performs. Had the district court included the *Pickering* test in connection with its fair warning analysis, it would have found Noriega was not on notice that temporarily suspending Acevedo violated a clearly established First Amendment right to free speech based on the facts alleged in the Complaint.

Acevedo acknowledges he was provided with the Suspension Memorandum (Doc. 23-2), *see* Doc. 1 at 28, ¶¶ 212-213, 216, in which Noriega details, among other grounds for suspension, loss of confidence (rank-and-file and leadership); insubordination; incompetence; failure to follow departmental policy; impertinence; offensive conduct and remarks; opprobrium; disrepute; loss of trust; and maladministration, as reasons for the decision to suspend Acevedo. Acevedo

dismisses all the reasons as "pretextual." [5] *See* Doc. 1 at 28, 41, ¶¶ 213, 284. Acevedo offers only conclusory allegations that Noriega suspended him in response to pressure from the Commissioners, whose alleged "misconduct" was outlined in Acevedo's Memorandum. *See* Doc. 1 at 28, ¶¶ 214-215. Acevedo attributes his suspension to a "long-standing pattern and practice" of retaliatory conduct by "the City Commission and certain members individually thereof" against "those who" speak out "against the Defendant Commissioners or take public positions that the Defendant Commissioners do not like." *See* Doc. 1 at 29, ¶ 217.

On their face, Acevedo's allegations do not (1) attribute to Noriega any retaliatory animus, or (2) provide any explanation that would contravene the grounds set forth for Acevedo's suspension (Doc. 23-2). Further, Acevedo fails to address how his high-ranking position as Chief of Police factored into his suspension.

As a matter of law, Miami's chief of police is charged by law with "promulgat[ing] all orders, rules, and regulations for the government of the police force". *See* City of Miami Charter § 24; Doc. 1 at 39-40, ¶ 275. As the City's top law enforcement official, Acevedo was in a policy-making role. For such employees, "First Amendment constitutional protection is often slight." *Bates v. Hunt*, 3 F.3d

---

[5] Acevedo was obligated to do more than plead, in a conclusory fashion, that the grounds for his suspension were "pretextual." Acevedo's conclusory allegations are not entitled to an assumption of truth. "Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss." *Perez v. City of Opa-Locka*, 629 F. Supp. 3d 1164, 1173 (S.D. Fla. 2022).

374, 378 (11th Cir. 1993); *see also Shahar v. Bowers*, 114 F.3d 1097, 1103 (11th Cir. 1997) (explaining that government employees "with some policymaking role" are "in a special class of employees and might seldom prevail under the First Amendment in keeping their jobs when they conflict with their employers").

Given Acevedo's policy-making position and the written justifications for suspension, his burden was extremely high. He needed to plausibly allege facts that attributed to ***Noriega*** a reasonable ***belief*** that a temporary suspension with pay, subject to an evidentiary hearing and a full Commission vote at a public meeting, was a clear violation of Acevedo's limited First Amendment rights. *See Ashcroft*, 556 U.S. at 673. Acevedo failed to meet that burden. Instead, Acevedo depicted Noriega as an agent of the Commission, despite being an independent Charter officer with prescribed duties and responsibilities. Acevedo's conclusory allegations do not undermine the objectively factual grounds for suspension presented in the Suspension Memorandum. *See* Doc. 23-2.

Had the district court considered *Pickering* balancing as part of its fair warning analysis as to Noriega, it would have determined that no reasonable city manager could have been on notice that suspending a chief of police based on the facts contained in the Suspension Memorandum would violate First Amendment rights. *See King*, 2018 WL 515350, at *4 (stating that even clearly established law showed plaintiff's speech was citizen speech on a matter of public concern, it was

not clearly established that the *Pickering* balancing test would weigh in the plaintiff's favor), *aff'd*, 916 F.3d 1339 (11th Cir. 2019).

**The burden was on Acevedo to rebut the presumption of qualified immunity.**

The fact that Noriega was exercising his discretion when he suspended Acevedo is not in question as Acevedo did not contend otherwise. *See* Doc. 75 at 28. Because there is no dispute that Noriega was acting within his discretionary duties in suspending Acevedo, Noriega is afforded the presumption of qualified immunity. *See Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019). Acevedo's Complaint fails to allege facts rebutting Noriega's presumption of qualified immunity and instead relies on conclusory allegations. *See* Doc. 1 at 41, ¶ 288.

## NOTICE OF ADOPTION BY REFERENCE

Pursuant to Rule 28(i), Fed. R. App. P., and 11th Cir. Rule 28-1(f), Appellant Noriega adopts by reference Section I. of the Argument section at pages 25-41 of the Commissioners' Initial Brief entitled "Acevedo's Memorandum Is Not Constitutionally Protected".

## CONCLUSION

For the foregoing reasons, the district court's Order, Doc. 75, should be reversed, with instructions to dismiss the claims against Appellant, City Manager, Arthur Noriega.

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,272 words, as counted by Microsoft Word.

Respectfully submitted,


*/s/ Mason A. Pertnoy*
**MASON A. PERTNOY**
Florida Bar No. 18334
KRINZMAN HUSS LUBETSKY FELDMAN
   & HOTTE | AWERBACH COHN PEREZ
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, FL 33131
Telephone: (305) 854-9700
Facsimile: (305) 854-0508
map@khllaw.com
mschneider@khllaw.com
eservicemia@khllaw.com

## **CERTIFICATE OF SERVICE**

I certify on April 8, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify this document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Mason A. Pertnoy*
**MASON A. PERTNOY**