UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 24-12650-CC

_____

HUBERT ARTURO ACEVEDO,
PLAINTIFF/APPELLEE,

v.

ALEX DIAZ DE LA PORTILLA, JOE CAROLLO,
ARTHUR NORIEGA, AND
MANOLO REYES,
DEFENDANTS/APPELLANTS.

_____

ON NON-FINAL APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
OF FLORIDA.
HON. KATHLEEN M. WILLIAMS, DISTRICT JUDGE

_____

**REPLY BRIEF OF APPELLANT ARTHUR NORIEGA**

_____

MASON A. PERTNOY
KHL LAW
Alfred I. duPont Building
169 E. Flagler Street, Suite 500
Miami, FL 33131
Telephone: (305) 854-9700
Facsimile:  (305) 854-0508
E-mail: map@khllaw.com
mschneider@khllaw.com
eservicemia@khllaw.com
*Counsel for Appellant, ARTHUR NORIEGA*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1, appellant certifies the following persons and entities may have an interest in this case:

Hubert Arturo Acevedo

Linette M. Aguirre

John R. Byrne

Bryan E. Capdevila

Heaven Chee

Joe Carollo

City of Miami, Florida

Michael T. Davis

Alex Diaz de la Portilla

Johan Dos Santos

Hon. Donald L. Graham. Senior U.S. District Judge

Marcos D. Jimenez

Kevin R. Jones

Kozyak Tropin & Throckmorton, P.A.

Krinzman Huss Lubetsky Feldman & Hotte

Benedict P. Kuehne

Kuehne Davis Law, P.A.

Leon Cosgrove Jimenez, LLP

Sam T. Linn

Javier A. Lopez

Michael R. Lorigas

Chris M. McAliley, U.S. Magistrate Judge (Retired)

Maderal Byrne PLLC

Miami City Attorney's Office

Jordi CarloSantiago Martinez-Cid

Kerri L. McNulty (Deceased)

Arthur Noriega

Stephanie K. Panoff

Mason A. Pertnoy

Jose M. Quiñon

Jose M. Quiñon, P.A.

Frank Quintero, Jr.

Quintero Broche & Fonseca-Nader, P.A.

Manolo Reyes

Thomas A. Tucker Ronzetti

Hon. Edwin G. Torres, Chief U.S. Magistrate Judge

Tucker Ronzetti, P.A.

Hon. Kathleen M. Williams, U.S. District Judge

Vedder Price, P.C.

George K. Wysong

**Statement as to Corporate Ownership:**

Appellants Alex Diaz de la Portilla, Joe Carollo, and Arthur Noriega are individuals. Appellant Manolo Reyes is a deceased individual. Appellee Hubert Arturo Acevedo is an individual.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This is a civil-rights case by a former chief of police claiming retaliation for alleged First Amendment protected speech.  First Amendment issues are difficult. *See, e.g.*, *Wollschlager v. Governor, State of Fla.*, 843 F.3d 1293, 1300 (11th Cir. 2017) ("Despite its majestic brevity—or maybe because of it—the freedom of speech clause of the First Amendment sometimes proves difficult to apply."). Qualified immunity further compounds the complexity here. Appellant Noriega respectfully requests oral argument to assist in the clarification of the issues.

# TABLE OF CONTENTS

STATEMENT OF ADOPTION OF BRIEFS BY OTHER PARTIES …………....…1

ARGUMENT……………………………………………………….…….…..……2

   I.  Acevedo ignores the flaws in the district court's fair warning analysis. …….3

   A.  Acevedo's reliance on *Jarrad* is misplaced. …..…………...………..……...5

   B.  Acevedo never directly contends with the lack of retaliatory animus attributed to Noriega in the Complaint. …………………….……….……...7

   C.  Acevedo's definition of the applicable fair warning law is too broad. …....10

   II.  Acevedo's suspension does not constitute an adverse employment action….13

NOTICE OF ADOPTION BY REFERENCE …..……………………..……………15

CONCLUSION ………………………………………………………………..…15

CERTIFICATE OF COMPLIANCE ……………………….………………..……15

CERTIFICATE OF SERVICE …………………………….…………….…………16

# TABLE OF AUTHORITIES

## Cases

*Akins v. Fulton County*,
     420 F.3d 1293 (11th Cir. 2005)……….………………….…………5, 14, 15

*Ashcroft v. al-Kidd*,
     563 U.S. 731 (2011)……………..…………………….……………...10

*Baxter v. Roberts*,
     54 F.4th 1241 (11th Cir. 2022)……………………………………10

*Bell v. Sheriff of Broward Cty.*,
 6 F.4th 1374 (11th Cir. 2021)……………………….…………2, 13, 14

*Bennett v. Hendrix*,
 423 F.3d 1247 (11th Cir. 2005)…………………….……………7

*Cantu v. City of Dothan*,
 974 F.3d 1217 (11th Cir. 2020) ……..……………..………….6

*Chambers v. Cherokee Cnty.*,
 743 Fed. Appx. 960 (11th Cir. 2018) ……………….…………9, 10

*Coffin v. Brandau*,
 642 F.3d 999 (11th Cir. 2011) ………….………………………..4

*Dartland v. Metropolitan Dade Cty.*,
 866 F.2d 1321 (11th Cir. 1989) ……………………………….6

*Day v. Taylor*,
 400 F.3d 1272 (11th Cir. 2005) ………..….……………….10

*Echols v. Lawton*,
 913 F.3d 1313 (11th Cir. 2019)…………………………….7

*Fuller v. Mendez*,
 2025 U.S. Dist. LEXIS 180578 (S.D. Fla. Sept. 15, 2025) ……….12

*Gaines v. Wardynski*,
 871 F.3d 1203 (11th Cir. 2017) ………………………..3, 4, 5, 6

*Green v. Brantley*,
 941 F.2d 1146 (11th Cir. 1991) ……..……………………..11

*Hammett v. Paulding Cty.*,
 875 F.3d 1036 (11th Cir. 2017) ………..………………..11

*Hansen v. Soldenwagner*,
 19 F.3d 573 (11th Cir. 1994) ………….…………………….6

*Holland v. Gee*,
        677 F.3d 1047 (11th Cir. 2012)………………………………………13

*Hope v. Pelzer*,
        536 U.S. 730 (2002)……………………………………………….2

*Jarrard v. Sheriff of Polk Cnty.*,
        115 F.4th 1306 (11th Cir. 2024) ………………..………………4, 5

*Kidd v. Mando Am. Corp.*,
        731 F.3d 1196 (11th Cir. 2013)……………………………………13

*Lee v. Ferraro*,
        284 F.3d 1188 (11th Cir. 2002) …………………………………..4

*Maggio v. Sipple*,
        211 F.3d 1346 (11th Cir. 2000) ………………………………….6

*Martin v. Baugh*,
        141 F.3d 1417 (11th Cir. 1998) ………………………………5, 6

*Nieves v. Bartlett*,
        139 S. Ct. 1715 (2019) ………………………..…………………7, 8

*Pickering v. Board of Education*,
        391 U.S. 563 (1968) ……………..………………………………..5

*Santamorena v. Georgia Military College*,
        147 F.3d 1337 (11th Cir. 1998) …………………………………..4

*Sasser v. Bd. of Regents*,
        2023 U.S.App. LEXIS 5745 (11th Cir. Mar. 10, 2023)…………...6

*Vinyard v. Wilson*,
        311 F.3d 1340 (11th Cir. 2002) …………………………………..4

*Wade v. United States*,
        13 F. 4th 1217 (11th Cir. 2021) …………………………….…6

*Wall-Desousa v. Florida Dep't of Highway Safety*,
      691 Fed. Appx. 584 (11th Cir. 2017) ……………………………..……10

*Wollschlager v. Governor, State of Fla.*,
      843 F.3d 1293 (11th Cir. 2017) ……………………………………..……v

*Woodard v. Town of Oakman*,
      885 F. Supp. 2d 1216 (N.D. Ala. 2012) ……………..……..………..…8

## Other Authorities

11th Cir. Rule 28-1(f)……………………………………………………....…1, 15

Rule 28(i), Fed. R. App. P………….…………………………….……..………1, 15

Rule 32(a), Fed. R. App. P…………………………..……………………………15

## STATEMENT OF ADOPTION OF BRIEFS BY OTHER PARTIES

Pursuant to Rule 28(i), Fed. R. App. P., and 11th Cir. Rule 28-1(f), Appellant Noriega adopts by reference in full the following specific portion of Appellants, City of Miami Commissioners, Alex Diaz de la Portilla, Joe Carollo, and Manolo Reyes' (the "Commissioners") Reply Brief (the "Commissioners' Reply Brief"):  Section I. of the Argument section at pages 3-14 of the Commissioners' Reply Brief entitled "Acevedo's Memorandum Is Not Constitutionally Protected."

## ARGUMENT

Acevedo's claims against City Manager Noriega collapse under both the pleading standards for First Amendment retaliation and the rigorous protections of qualified immunity. Acevedo has not alleged facts plausibly attributing retaliatory animus to Noriega; instead, Acevedo impermissibly imports the motivations of the Defendant Commissioners to fill the gap. The Suspension Memorandum—cited by Acevedo himself—reflects legitimate, non-retaliatory grounds for the temporary, paid suspension, which, under *Bell v. Sheriff of Broward Cnty.*, 6 F.4th 1374 (11th Cir. 2021), does not constitute an adverse employment action.

Nor does Acevedo's broad conception of clearly established law withstand scrutiny. The Supreme Court and Eleventh Circuit have consistently rejected defining rights at such a high level of generality. Unlike the "obvious clarity" cases relied upon in *Hope v. Pelzer*, 536 U.S. 730, 736 (2002), and its progeny, Noriega's decision to suspend a police chief with pay, subject to a Commission hearing, is not conduct that every reasonable official would have known to be unconstitutional. To the contrary, precedent makes plain that qualified immunity remains especially robust in the First Amendment employment context.

For these reasons, the district court erred in denying qualified immunity. This Court should reverse and remand with instructions to dismiss the claims against City Manager Noriega.

**I.      Acevedo ignores the flaws in the district court's fair warning analysis**.

In response to Noriega's critique of the district court's failure to conduct an independent fair warning analysis of Noriega's exercise of his power to suspend Acevedo, the Answer Brief ignores the district court's flawed reasoning and substitutes a new qualified immunity analysis in the form of a "clearly established law" framework. While not labeled as a tipsy coachman theory, Acevedo contends, in essence, that the district court need not have identified materially similar case law because there is "no doubt" that Noriega's actions were unlawful. *See* Ans. Br. at 56.

As illustrated in *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017), there are three ways a plaintiff can show a government official had fair warning: 1) a materially similar case has been decided; 2) a broader, clearly established principal exists that would control the novel facts of a given situation; and 3) the conduct involved may "so obviously" violate the constitution that prior case law is unnecessary.

The second and third methods are known as "obvious clarity" cases. *Gaines*, 871 F.3d at 1209. "They exist where the words of the federal statute or constitutional provision at issue are 'so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful,' or where the case law that does exist is so clear and broad (and 'not tied to particularized facts') that 'every objectively

reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Id. quoting Vinyard v. Wilson*, 311 F.3d 1340, 1350-53 (11th Cir. 2002).

There's a reason why the district court declined to apply either of the "obvious clarity" prongs of the fair warning test. As noted in *Gaines*, cases do not often arise under the second and third methods. *See, e.g.*, *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1340 n.6 (11th Cir. 1998) ("these exceptional cases rarely arise"); *see also Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) ("Our case law has made clear that 'obvious clarity' cases will be rare.") (citing multiple cases, including *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (referring to obvious clarity cases as a "narrow exception").

Acevedo relies on *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1323-1324 (11th Cir. 2024) and argues from that platform that the district court could have found fair warning without comparable precedent. *See* Ans. Br. at 56. According to Acevedo, all city officials are on fair warning that it is unlawful to retaliate against whistleblowers. *See id.* at 57.

Acevedo's revisionist analysis is flawed. First, Acevedo's theory is unsupported by existing authority. Second, Acevedo failed to allege the necessary retaliatory animus for his statement of law to make sense. Third, Acevedo's statement is overly broad and unworkable.

## A.    Acevedo's reliance on *Jarrad* is misplaced.

The *Jarrard* case is inapposite to the claims against Noriega. Noriega was not faced with a religious viewpoint scenario. Instead, Noriega was faced with a fundamental question. Is it unlawful to suspend a chief of police with pay, subject to a hearing by the full City Commission?  The factors at play were not about whether Noriega was policing the religious views of Acevedo. They were about whether Noriega's suspension met the criteria under the City charter.

In lieu of a considered analysis of *Jarrard*, Acevedo attacks Noriega's citation of *Martin v. Baugh*, 141 F.3d 1417 (11th Cir. 1998), incorrectly contending it is "abrogated" by *Akins v. Fulton County*, 420 F.3d 1293 (11th Cir. 2005). *See* Ans. Br. at 56-57. Acevedo distorts Noriega's invocation of *Martin* by adding the phrase "unless the plaintiff produces an identical precedent." *See Id.* at 56. Respectfully, Acevedo's characterization is not a good-faith framing of Noriega's reliance on *Martin*. Noriega did not assert that the analysis requires "an identical precedent." Rather, Noriega cited *Martin* for the basic proposition in First Amendment retaliation cases that the intensely fact-specific legal determinations demanded by the qualified immunity test established that, under *Pickering*, public officials are rarely on notice that their actions would be unlawful. *See* Noriega's Initial Br. at 7.

That proposition continues to hold true. The Eleventh Circuit has consistently maintained that it remains "particularly difficult to overcome the qualified immunity

- 5 -

defense in the First Amendment context." *Gaines*, 871 F.3d at 1210, *citing Martin*, 141 F.3d at 1420. The court in *Gaines*, 871 F.3d at 1210, explained:

> It is particularly difficult to overcome the qualified immunity defense in the First Amendment context. *See, e.g.*, *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000) ("'a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful'") (citation omitted); *Martin v. Baugh*, 141 F.3d 1417, 1420 (11th Cir. 1998) ("'[O]nly in exceptional cases will government actors have no shield against claims made against them in their individual capacities.' Martin's case is especially difficult to maintain because he bases his claim against Baugh on the First Amendment.") (citations omitted); *Hansen v. Soldenwagner*, 19 F.3d 573, 576 (11th Cir. 1994) (observing that decisions in the First Amendment context "tilt strongly in favor of immunity" and only in the rarest of cases will it be found that a reasonable official should have known that he violated "clearly established" law); *Dartland v. Metropolitan Dade Cty.*, 866 F.2d 1321, 1323 (11th Cir. 1989) (noting that only "the extraordinary case" will survive qualified immunity in the First Amendment context).

More recently, in *Sasser v. Bd. of Regents*, 2023 U.S. App. LEXIS 5745 *7 (11th Cir. Mar. 10, 2023), the Eleventh Circuit quoted *Gaines* and other cases for the basic propositions set forth in Noriega's brief:

> The controlling question in the "clearly established" prong of the qualified immunity analysis is whether the individual Defendants received "fair warning" that their conduct was unconstitutional. *Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021). This "standard is a demanding one." *Cantu v. City of Dothan*, 974 F.3d 1217, 1235 (11th Cir. 2020). This is especially true in the context of the First Amendment. *See, e.g., Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) ("It is particularly difficult to overcome the qualified immunity defense in the First Amendment context."); *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000) ("[A] defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful." (quotation omitted)).

As applied to Noriega's circumstances, it cannot be said that either prong of the "obvious clarity" cases would apply. Had the district court substituted either of these tests to its fair warning analysis – it did not – it would have found that Noriega was not on notice that temporarily suspending Acevedo pending a hearing violated a clearly established First Amendment right to free speech based on the facts alleged here.

### B.    Acevedo never directly contends with the lack of retaliatory animus attributed to Noriega in the Complaint.

Acevedo ignores, as did the district court, the absence of retaliatory animus attributable to Noriega's decision to suspend Acevedo.

To establish a First Amendment retaliation claim, a plaintiff must show that (1) his speech was constitutionally protected; (2) he suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

To demonstrate a causal connection, Acevedo must allege facts giving rise to a plausible inference that Noriega was **subjectively** motivated to engage in the adverse action because of Acevedo's protected speech. *See Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019) (plaintiff must allege "that a causal connection exists between the speech and the official's retaliatory conduct"); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (retaliatory motive "must be a 'but-for' cause, meaning

- 7 -

that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.").

The facts surrounding Noriega's motivation to suspend Acevedo are, therefore, an essential component of Acevedo's retaliation claim.

Since Acevedo's September 24, 2021 Memorandum was confined to allegations levied against the Commissioner Defendants, Acevedo must allege plausible facts that attribute retaliatory animus to Noriega. *Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216, 1227, 1230 (N.D. Ala. 2012) (allegations of subjective motivation to take adverse action based on protected speech are required to move "across the line from conceivable to plausible").

Lacking any plausible facts to attribute retaliatory animus to Noriega, Acevedo attempts to manufacture a causal connection by characterizing Noriega's stated reasons for suspending him, as outlined in the Suspension Memorandum, as "pretextual." *See* Compl. ¶¶ 212-213. Such conclusory allegations are not enough.

In place of retaliatory animus attributable to Noriega, Acevedo falls back on the motivations of the Defendant Commissioners to terminate him, arguing that the fair warning applicable to the "Commissioners" and "Manager Noriega" is "alike." *See* Ans. Br. at 57. It is not.

Needing something to close the causal connection gap, Acevedo substitutes the subjective motivation of the Defendant Commissioners for Noriega's lack of

retaliatory intent. Acevedo does this by alleging that the Defendant Commissioners pressured Noriega to suspend Acevedo in retaliation for speech that the Defendant Commissioners "did not like." *See* Compl. ¶¶ 214-215, 217.

The only allegation that Acevedo can offer that is attributed to Noriega is an ambiguous remark made upon delivery of the Suspension Memorandum. *See* Compl. ¶ 216. Noriega's alleged comment does not suggest that Noriega held a subjective motivation to retaliate against Acevedo. Rather, it is more consistent with the wrongdoing charged in the Suspension Memorandum, which included charges of, *inter alia*, loss of confidence (rank-and-file and leadership), incompetence and failure to follow departmental policy as justifications for the decision to suspend Acevedo. *See* Suspension Memorandum, Doc. 23-2.

Throughout these proceedings, Acevedo has ignored the fact that the Defendant Commissioners were the target of his allegations of corruption. Even Acevedo's allegations of a "pattern and practice of retaliation" are directed at the City Commission as a body. No such allegations are directed at Noriega. Acevedo never contends with presumptive qualified immunity applicable to Noriega's actions.

Acevedo expends much of his brief arguing that the "incorporation by reference" doctrine does not apply to the Suspension Memorandum because it was not central to his claim. *See* Ans. Br. at 42-43. That is incorrect. *See, e.g., Chambers*

*v. Cherokee Cnty.*, 743 Fed. Appx. 960, n.1 (11th Cir. 2018); *Wall-Desousa v. Florida Dep't of Highway Safety*, 691 Fed. Appx. 584, n.3 (11th Cir. 2017); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Acevedo does not oppose the authenticity of the Suspension Memorandum but rather asserts he did not rely on it "as a truthful document to 'make out a claim.'" *See* Ans. Br. at 42-43.

As set forth above, the Suspension Memorandum plays a central role in Acevedo's First Amendment claim. By incorporating it, Acevedo is attempting to establish retaliatory animus.

Acevedo fails to allege specific facts plausibly showing that Noriega issued the Suspension Memorandum because he had a subjective motivation to punish Acevedo for his speech.

## C.    Acevedo's definition of the appliable fair warning law is too broad.

The Supreme Court has "repeatedly" warned that courts should not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The Eleventh Circuit has explained that a qualifying "broad statement" cannot be "too general" and must "put every reasonable officer" on notice that it "clearly prohibit[s] the officer's conduct in the particular circumstances before him.'" *Baxter v. Roberts*, 54 F.4th 1241, 1268 (11th Cir. 2022) (alteration in original) (quotation omitted).

This is an important component of a robust qualified immunity standard because "a pending civil rights lawsuit is a sword of Damocles ... seriously impeding the official in the performance of his duties." *Green v. Brantley*, 941 F.2d 1146, 1150 (11th Cir. 1991) (en banc). "Avoidance of distraction to public officials [is] one of the main purposes of the qualified immunity doctrine." *Id.*

There is a strong public interest at stake here in protecting government officials in the reasonable discharge of their duties that such officials are insulated not only from damages, but even from the costs of going to trial. This is why, in most instances, interlocutory appeal of district court decisions denying qualified immunity is permitted. *See, e.g.*, *Hammett v. Paulding Cty.*, 875 F.3d 1036, 1046 (11th Cir. 2017) ("So strong is the public interest in protecting government officials in the reasonable discharge of their duties that such officials are insulated not only from damages, but even from the costs of going to trial; for this reason, in most instances interlocutory appeal of district court decisions denying qualified immunity is permitted.").

No court has conducted a qualified immunity analysis of a city manager's decision to temporarily suspend a police chief with pay, pending an evidentiary hearing and determination by the Commission, justified by a memorandum containing eight individualized and fact-supported grounds for the suspension, none of which bear any relationship with the communication that the plaintiff contends

was the basis for his suspension. Based on these *case-specific* circumstances, Noriega was not on notice that his exercise of his discretionary powers to temporarily suspend Acevedo with pay would violate Acevedo's First Amendment right to free speech.

In the absence of comparable case law, the district court ignored the specific pre-suspension context posed in this case as to Noriega, and instead considered the Commissioners' vote to *terminate* Acevedo, finding that "the individual Defendants" (including Noriega) had fair warning that "their conduct" was unlawful. *See* Doc. 75 at 29-30 (court's order). The district court needed to conduct a separate and complete qualified immunity analysis as to Noriega and instead lumped him together with the Commissioners despite their distinct roles and authority. *See id.*

Recently, the Honorable Federico A. Moreno dismissed the plaintiffs' First Amendment retaliation claims against Miami City Attorney Victoria Mendez based on qualified immunity and other immunities in a case involving overlapping facts and parties as those alleged by Acevedo here. *See Fuller v. Mendez*, No. 23-24251-CIV-MORENO, 2025 U.S. Dist. LEXIS 180578, 2025 WL 2645467 (S.D. Fla. Sept. 15, 2025). Judge Moreno concluded that City Attorney Mendez "was acting within her discretionary function" and that "[i]t is not clear that every objectively reasonable government official in Mendez's position would know that she was clearly violating Plaintiffs' First Amendment rights." *Fuller*, 2025 U.S. Dist. LEXIS

- 12 -

180578 at *19, 29. Here, Noriega was acting within his discretionary function in temporarily suspending Acevedo, and it is not clearly established that a reasonable government official in Noriega's position would be on notice that his exercise of his discretionary powers to temporarily suspend Acevedo with pay would violate Acevedo's First Amendment right to free speech.

## II.     Acevedo's suspension does not constitute an adverse employment action.

"An adverse employment action is 'a serious and material change in the terms, conditions, or privileges of employment.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) (citations omitted). "'[T]he employment action must be materially adverse as viewed by a reasonable person in the circumstances.'" *Holland v. Gee*, 677 F.3d 1047, 1058 (11th Cir. 2012) (citations omitted).

The Eleventh Circuit has held that a deputy's "five-day suspension with pay pending an investigation into his conduct is not an adverse action" for purposes of a First Amendment retaliation claim. *Bell*, 6 F.4th at 1379. Although the overarching question is "whether the challenged conduct would, objectively, chill or deter the exercise of constitutionally protected speech", the court decided "the case narrowly on the complaint before us" and the "circumstances" of that case. *Id.*

Instead of identifying adverse employment "actions" that Noriega took against him, Acevedo attempts to contextualize his suspension in a bid to claim that suspension alone constitutes an adverse employment action that would chill the

exercise of First Amendment speech. Context is not a surrogate for concrete examples of adverse employment actions that constitute "important conditions" of employment. Despite the divergent nature of Acevedo's theory, his Brief offers no authority to support his theory.

Acevedo cites *Bell*, 6 F.4th at 1379, in which the court stated, "we do not think that such a temporally-limited suspension pending an investigation into alleged misconduct would deter a reasonable person from exercising his First Amendment Rights." The same rationale applies here. In *Bell*, the deputy's suspension with pay was 1) temporary, 2) with pay, and 3) pending an investigation, which compares favorably with Acevedo's suspension, which was also 1) temporary, 2) paid, and 3) pending an evidentiary hearing before the full Commission on the merits.

As pointed out in Acevedo's Answer Brief, suspension and termination are "two distinct events" that should not be conflated. *See* Ans. Br. at 51. Nevertheless, Acevedo does just that. Acevedo offers no authority in support of expanding qualified immunity law to include an exception for "aggregated circumstances" in place of an adverse employment action that impacts an "important condition" of employment. *Id.* at 55.

Finally, Acevedo cites *Akins* for the proposition that in deciding whether employment actions are adverse, the employer's acts are considered both individually and collectively. *See* Ans. Br. at 52-53. However, the *Akins* court, 420

F.3d at 1300-1301, is still referring to "adverse employment actions." Unlike the plaintiff in *Akins*, Acevedo has not alleged any employment action attributable to Noriega other than suspension.

## NOTICE OF ADOPTION BY REFERENCE

Pursuant to Rule 28(i), Fed. R. App. P., and 11th Cir. Rule 28-1(f), Appellant Noriega adopts by reference in full the following specific portion of the Commissioners' Reply Brief: Section I. of the Argument section at pages 3-14 of the Commissioners' Reply Brief entitled "Acevedo's Memorandum Is Not Constitutionally Protected."

## CONCLUSION

For the foregoing reasons, the district court's Order should be reversed, with instructions to dismiss the claims against Appellant, City Manager, Arthur Noriega.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief is printed in Times New Roman 14-point font and contains 3,419 words, as counted by MS Word Administration.

Respectfully submitted,

*/s/ Mason A. Pertnoy*
**MASON A. PERTNOY**
Florida Bar No. 18334
KHL LAW
Alfred I. duPont Building
169 E. Flagler Street, Suite 500

- 15 -

Miami, FL 33131
Telephone: (305) 854-9700
Facsimile:  (305) 854-0508
E-mail: map@khllaw.com
mschneider@khllaw.com
eservicemia@khllaw.com
*Counsel for Appellant, ARTHUR NORIEGA*

## CERTIFICATE OF SERVICE

I certify that on September 22, 2025, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify this document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*/s/ Mason A. Pertnoy*
**MASON A. PERTNOY**