No. 24-12650

IN THE

# United States Court of Appeals
# For the Eleventh Circuit

---

**HUBERT ARTURO ACEVEDO**,
PLAINTIFF-APPELLEE,

v.

**ALEX DIAZ DE LA PORTILLA, ET AL.**,
DEFENDANTS-APPELLANTS.

---

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CV-20224-CIV-KMW

---

**REPLY BRIEF OF CITY COMMISSIONERS**
**ALEX DIAZ DE LA PORTILLA, JOE CAROLLO, AND THE ESTATE OF MANOLO**
**REYES**

---

Thomas A. Tucker Ronzetti
5760 SW 46th Terrace
Miami, FL 33155
Tel: 305.546.4638

Javier A. Lopez
600 Brickell Ave., Suite 1500
Miami, FL 33131
Tel: 786.741.3177
*Counsel for Appellant Diaz de la Portilla*

Benedict P. Kuehne
100 SE 2 Street, Suite 3650
Miami, FL 33131
Tel: 305.789.5989
*Counsel for Appellant Carollo*

Frank Quintero, Jr.
75 Valencia Avenue, Suite 800
Coral Gables, FL 33134
Tel: 305.446.0303

Jose M. Quiñon
75 Valencia Avenue, Suite 800
Coral Gables, FL 33134
Tel: 305.858.5700
*Counsel for Appellant the Estate*
*of Manolo Reyes*

**APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1, appellants certify the following persons and entities may have an interest in this case:

Hubert Arturo Acevedo

Linette M. Aguirre

John R. Byrne

Bryan E. Capdevila

Heaven Chee

Joe Carollo

City of Miami, Florida

Michael T. Davis

Alex Diaz de la Portilla

Johan Dos Santos

Hon. Donald L. Graham. Senior U.S. District Judge

Marcos D. Jimenez

Kevin R. Jones

Kozyak Tropin & Throckmorton, P.A.

Krinzman Huss Lubetsky Feldman & Hotte

*Acevedo v. Diaz de la Portilla, 11th Circuit Case No.* 24-12650

Benedict P. Kuehne

Kuehne Davis Law, P.A.

Leon Cosgrove Jimenez, LLP

Sam T. Linn

Javier A. Lopez

Michael R. Lorigas

Chris M. McAliley, U.S. Magistrate Judge (Retired)

Maderal Byrne PLLC

Miami City Attorney's Office

Jordi Carlo Santiago Martinez-Cid

Kerri L. McNulty (Deceased)

Arthur Noriega

Stephanie K. Panoff

Mason A. Pertnoy

Jose M. Quiñon

Jose M. Quiñon, P.A.

Frank Quintero, Jr.

Quintero Broche & Fonseca-Nader, P.A.

Manuel Reyes

The Estate of Manolo Reyes

*Acevedo v. Diaz de la Portilla, 11th Circuit Case No.* 24-12650

Thomas A. Tucker Ronzetti

Hon. Edwin G. Torres, Chief U.S. Magistrate Judge

Tucker Ronzetti, P.A.

Hon. Kathleen M. Williams, U.S. District Judge

Vedder Price (FL), LLP

George K. Wysong

**Statement as to Corporate Ownership:**

Appellants Alex Diaz de la Portilla, The Estate of Manolo Reyes, Joe Carollo, and

Arthur Noriega are individuals. Appellee Hubert Arturo Acevedo is an individual.

# TABLE OF CONTENTS

Page

APPELLANTS' CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ......................................................C1

I.    ACEVEDO'S MEMORANDUM IS NOT CONSTITUTIONALLY PROTECTED...................................................................................................3

    A.    Acevedo's Memorandum Is Central to Broad Duties as Police Chief ..........3

    B.    The Memorandum's Main Thrust and Purpose Were Not a Public Concern ....................................................................................................9

    C.    Acevedo Fails to Satisfy Pickering Balancing..............................................11

II.   QUALIFIED IMMUNITY DEFEATS ACEVEDO'S CLAIM........................14

    A.    No Broad Principle Establishes the First Amendment Protected Acevedo's Memorandum..................................................................................14

    B.    Pickering Balancing Does Not Lead to the Inevitable Conclusion the City Commission Could Not Terminate Acevedo as Police Chief......................17

    C.    The Pleadings Establish a Lawful Motivation So Qualified Immunity Applies .................................................................................................19

III.  LEGISLATIVE IMMUNITY DEFEATS ACEVEDO'S CLAIMS ................24

CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS.......................................................................29

CERTIFICATE OF SERVICE ..........................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alves v. Board of Regents,*
804 F.3d 1149 (11th Cir. 2015) ....................................................... 4, 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009). Acevedo's Memorandum ................................ 23, 24

*Basson v. Mortg. Elec. Registration Sys., Inc.,*
741 F. App'x 770 (11th Cir. 2018) ....................................................... 22

*\*Bates v. Hunt,*
3 F.3d 374 (11th Cir. 1993) .................................................. 12, 13, 14, 19

*Brown v. Crawford Cnty., Ga.,*
960 F.2d 1002 (11th Cir. 1992) ........................................................... 25

*Busby v. City of Orlando,*
931 F.2d 764 (11th Cir. 1991) ............................................................. 18

*Camp v. Corr. Med. Serv. Inc.,*
400 F. App'x 519 (11th Cir. 2010) ....................................................... 17

*Carollo v. Boria,*
833 F.3d 1322 (11th Cir. 2016) ............................................... 6, 7, 15, 16

*Chambers v. Cherokee Cnty.,*
741 F. App'x 640 ........................................................................... 21, 23

*Chesser v. Sparks,*
248 F.3d 1117 (11th Cir. 2001) ........................................................... 18

*Connick v. Myers,*
461 U.S. 138 (1983) ............................................................................ 12

*Cook v. Gwinnett Cnty. Sch. Dist.,*
414 F.3d 1313 (11th Cir. 2005) ........................................................... 18

*Cooper v. Smith,*
89 F.3d 761 (11th Cir. 1996) ............................................................... 18

*\*Dartland v. Metropolitan Dade County,*
866 F.2d 1321 (11th Cir. 1989) ................................................. 17, 18, 19

*Day v. Taylor,*
    400 F.3d 1272 (11th Cir. 2005) ........................................................ 22, 23

*Fernandez v. School Bd. of Miami-Dade Cnty.,*
    898 F.3d 1324 (11th Cir. 2018).......................................................... 4

*Gaines v. Wardynski,*
    871 F.3d 1203 (11th Cir. 2017) ........................................................ 15

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006) ...................................................................... 3, 7

*Gomez v. City of Doral,*
    No. 21-11093, 2022 WL 19201 (11th Cir. Jan. 3, 2022) ...................... 6, 7

*Hansen v. Soldenwagner,*
    19 F.3d 573 (11th Cir. 1994) ............................................................ 20

*Heyman v. Cooper,*
    31 F.4th 1315 (11th Cir. 2022)........................................................... 5

*Horsley v. Feldt,*
    304 F.3d 1125 (11th Cir. 2002) ......................................................... 21

*In re Hubbard,*
    803 F.3d 1298 (11th Cir. 2015) ......................................................... 25

*Hunter v. Bryant,*
    502 U.S. 224 (1991) ........................................................................ 24

*Jarrard v. Sheriff of Polk Cnty.,*
    115 F.4th 1306 (11th Cir. 2024).......................................................... 18

*Johnson v. City of Atlanta,*
    107 F.4th 1292 (11th Cir. 2024).......................................................... 21

*King v. Board of County Comm'rs,*
    916 F.3d 1339 (11th Cir. 2019) .................................................... 10, 11

*Lane v. Franks,*
    573 U.S. 228 (2014) ......................................................................... 6

*Leslie v. Hancock Cnty. Bd. of Educ.,*
    720 F.3d 1338 (11th Cir. 2013) ............................................... 12, 13, 14

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ......................................................................... 24

*Morgan v. Ford,*
6 F.3d 750 (11th Cir. 1993) ...................................................................... 10

*Moss v. City of Pembroke Pines,*
782 F.3d 613 (11th Cir. 2015) ............................................................ 7, 12

*Mt. Healthy City Sch. Dist. v. Doyle,*
429 U.S. 274 (1977) ......................................................................... 24, 26

*Oladeinde v. City of Birmingham,*
230 F.3d 1275 (11th Cir. 2000) ................................................................ 12

*Shahar v. Bowers,*
114 F.3d 1097 (11th Cir. 1997) (en banc) ........................................ 12, 13

*Stanley v. City of Dalton,*
219 F.3d 1280 (11th Cir. 2000) ................................................................ 18

*Stimpson v City of Tuscaloosa,*
186 F.3d 1328 (11th Cir. 1999) ......................................................... 24, 27

*United States v. Brewster,*
408 U.S. 501 (1972) .................................................................................. 25

*Vila v. Padrón,*
484 F.3d 1334 (11th Cir. 2007) ........................................................... 7, 10

*Vinyard v. Wilson,*
311 F.3d 1340 (11th Cir. 2002) ................................................................ 15

***Wall-Desousa v. Florida Dep't of Highway Safety,*
691 F. App'x 584 (11th Cir. 2017) .......................................... 21, 23, 24

*Yeldell v. Cooper Green Hosp., Inc.,*
956 F.2d 1056 (11th Cir. 1992) ................................................................ 25

*Zen Grp., Inc. v. Fla. Agency for Health Care Admin.,*
80 F.4th 1319 (11th Cir. 2023) ................................................................ 17

**Statutes**

City of Miami Code § 42-3 ............................................................................ 8

**Other Authorities**

Eleventh Circuit Rule 26.1-1 ........................................................................ 1

City of Miami Charter ................................................................................. 3

City of Miami Charter § 14.......................................................................... 10

City of Miami Charter § 24.......................................................................... 12

City of Miami Charter § 26.......................................................................... 22

Federal Rules of Appellate Procedure Rule 26.1......................................... 1

Federal Rule of Civil Procedure 12(b)(6) ....................................... 12, 18, 22

## **ARGUMENT**

This Reply addresses seven dispositive issues raised in Acevedo's Answer Brief.

First, Acevedo's Memorandum fell within his duties as a police chief and is not protected by the First Amendment. The Resolution did not strip the City of Miami Police Department of its duties regarding elected officials and their staffs, because it shifted only investigations to outside law enforcement. Acevedo's contrary construction has no support in the language or purpose of the Resolution, or in common sense.

Second, Acevedo's Memorandum is not of public concern because, seen through the Commission's express oversight power, the main thrust of his Memorandum is an internal dispute about oversight, budgeting, and investigations. Acevedo ignores that oversight power, the "main thrust" and purpose tests, and the form and context of the Memorandum.

Third, the City's police chief is a policymaker with near-complete control of its police department, an overwhelming weight in the *Pickering* balance. While conceding the police chief is a policymaker, Acevedo attempts to avoid the legal significance of that by distorting one case decision, ignoring the Court's doctrine and other binding decisions.

Fourth, qualified immunity defeats Acevedo's claim because First Amendment protection is unclear. Although Acevedo claims a broad statement of principle defeats qualified immunity, he never states what that principle is. Regardless, such a broad statement must apply with obvious clarity to defeat qualified immunity, and Acevedo never acknowledges—much less satisfies—that test. Especially in the context of municipal oversight of a police chief, Acevedo has yet been unable to identify relevant prior precedent restricting the authority of municipal elected officials.

Fifth, qualified immunity defeats Acevedo's claim because *Pickering* balancing does not lead to the inevitable conclusion that the City could not fire him. Acevedo never argues he can satisfy this. Instead, he contends *Pickering* does not apply in the qualified immunity context, but he depends on an inapplicable footnote in a non-employment case and ignores a wealth of controlling decisions.

Sixth, the record establishes a legitimate motivation for terminating Acevedo, so qualified immunity applies. The Complaint and the Memorandum show the commissioners conflicted with Acevedo about his investigatory treatment of an officer and his hiring practices. Acevedo was subsequently charged and, after an evidentiary hearing, the entire City Commission—including two non-party commissioners—voted to terminate him. Eight reasons for his termination appear in the Suspension Memorandum, a City-Charter-mandated charging document that

forms the basis of his suspension claim and is integral to his termination. Contrary to Acevedo's belief, the Suspension Memorandum is central to his claims and confirms Acevedo was not terminated exclusively due to an illegal motive.

Finally, absolute legislative immunity independently bars claims predicated on quintessentially legislative acts—voting, speechmaking, budgeting, and investigatory proceedings—and forecloses motive inquiries into those acts. Even if Acevedo's ultimate termination is not legislative, stripped of the allegations relating to legislative activity, Acevedo has no plausible claim.

Each point is independently fatal to Acevedo's claims.

## I.    Acevedo's Memorandum Is Not Constitutionally Protected.

First Amendment protection is an issue of law for the Court. *See* Answer Br. at 19. Here, the issue is resolved based on undisputed facts supplied by the Complaint, the Memorandum, the Resolution, and the City of Miami Charter and laws identifying its police chief's duties. Those facts establish Acevedo acted as a police chief, not a private citizen, when providing the Memorandum to his superiors, and the main thrust and purpose of the Memorandum was not a public concern.

### A.    Acevedo's Memorandum Is Central to Broad Duties as Police Chief.

The First Amendment does not protect statements made "pursuant to [their] official duties" because the employee is not acting as a private citizen. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (deputy district attorney's memorandum alleging

police misconduct was written pursuant to his official duties and therefore not protected by the First Amendment); *Alves v. Board of Regents*, 804 F.3d 1149, 1161–62, 1163–65 (11th Cir. 2015) (memorandum reporting mismanagement and interference did not "bear the hallmarks of daily activity" but was part of duties and so not protected). *See* Initial Br. at 29, 44–45.

The facts establish Acevedo's Memorandum is the act not of a private citizen but of a chief of police. He used his Memorandum to report to his superiors about interference with his department that he characterized as misconduct. This fell within his duties as police chief, or as he himself wrote, "[his] sworn duty . . . to uphold the rule of law." Doc. 17-3 at 8.*See* Initial Br. at 29–30.

The Court has described five factors that show whether an employee's speech was pursuant to official duties: "(1) speaking with the objective of advancing official duties; (2) harnessing workplace resources; (3) projecting official authority; (4) heeding official directives; and (5) observing formal workplace hierarchies." *Fernandez v. School Bd. of Miami-Dade Cnty.*, 898 F.3d 1324, 1332 (11th Cir. 2018). Acevedo's Memorandum, a police chief's report to his superiors alleging misconduct through interference with his police department, checks every box.

Acevedo's argument that the Resolution converted him into a private citizen, Answer Br. at 20–21, conflicts with any reasonable interpretation. The Resolution assigned only the *investigation* of commission wrongdoing to outside law

4

enforcement. It specifically limits its terms to "investigations" in the whereas clauses and three times in the one-paragraph operative body of Section 2. *See* Initial Br. at 6–7 (quoting Doc. 41-1 at 1–2). Nothing stripped Acevedo of his *reporting* duties. Otherwise, the city manager could hardly learn about possible criminal conduct to be investigated by independent, outside law enforcement.

Acevedo takes the Appellants to task for "insist[ing] on a literal reading of the Resolution," Answer Br. at 21, but that is exactly how the public, and lawyers and judges, are supposed to understand the plain meaning of a resolution. *See, e.g.*, *Heyman v. Cooper*, 31 F.4th 1315 (11th Cir. 2022) (explaining the court's task is "discerning the text's ordinary public meaning"). The Resolution used the language limiting its effect to "investigations" for a reason, so the police department's other functions would remain.

Because the Resolution tasks the city manager with directing independent investigations of City elected officials and their staff to outside law enforcement, Acevedo contends "there were no duties left within [his] professional responsibilities." Answer Br. at 22. Not so. His distorted interpretation of the Resolution would require the police chief—and because he directs it, the entire police department—to turn an official blind eye to criminal conduct by commissioners and their staffs. *See* Answer Br. at 21 ("As a practical matter, [the Resolution] put City elected officials beyond the jurisdiction of the MPD and its

5

Chief."). That is an enormous and unjustified leap. The Resolution is intended to prevent "the perception of a conflict or impropriety" and have "investigations proceed in a transparent manner, free from potential perceived conflicts." Doc. 41-1 at 1. Rather than having "no duties left," Answer Br. at 22, Acevedo possessed all his duties *except* making or directing investigations of his superiors, the commissioners, including reporting possible wrongdoing to the city manager just as he did in the Memorandum.

Beyond this, the form of and circumstances surrounding Acevedo's Memorandum reveal the act of a police chief: it was written as an internal memorandum addressed to his superiors, describing "interference" with his department, signed by him as chief of police, invoking his "sworn duty to uphold the rule of law." Doc. 17-3 at 8. *See* Initial Br. at 27–28. Acevedo ignores these points.

To support his position, Acevedo relies on authorities that dealt with employees providing testimony at a trial, *Lane v. Franks*, 573 U.S. 228 (2014), and reports to outside law enforcement, *Carollo v. Boria*, 833 F.3d 1322 (11th Cir. 2016), and *Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201 (11th Cir. Jan. 3, 2022). Answer Br. at 22–23. In each of those cases, the speech was outside the employees' duties and provided primarily outside of the workplace. In *Lane*, a youth program director testified at the trial of a former employee. 573 U.S. at 231. In *Carollo*, a city manager whose ordinary job duties "did not include anything to do with enforcing

Florida's campaign finance laws" reported violations to outside law enforcement. 833 F.3d at 1331. And in *Gomez*, a detective provided a sworn statement about corruption to an outside law enforcement agency. 2022 WL 19201, at *5.

In contrast, Acevedo's Memorandum was written within his broad duties as police chief and provided to his superiors; it only copied, as a police chief does, outside law enforcement. As the Court has explained, "a high-ranking employee's broad administrative responsibilities render[] his speech unprotected." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 620 (11th Cir. 2015) (assistant fire chief's broad responsibilities included statements to outside pension board). *See also Vila v. Padrón*, 484 F.3d 1334, 1339-40 (11th Cir. 2007) (report of illegal conduct made by vice president in charge of legal affairs fell within her broad duties and so was not protected). Because the Memorandum "owes its existence to [the] public employee's professional responsibilities," *Garcetti*, 547 U.S. at 421, it is not private speech, even if provided to others. *See, e.g.*, *Moss,* 782 F.3d at 619–21. Beyond that, as his Memorandum reveals, Acevedo's ordinary job functions included communicating with outside law enforcement. Doc. 17-3 at 4 ("I also reminded you of the fact that I had spoken to high level DOJ Officials in Washington, D.C., and have requested assistance in reviewing MPD internal affairs processes, and several non-fatal use of force incidents."). The Memorandum and Acevedo's distribution of it fell well within his ordinary job functions.

The Appellant City Commissioners do not argue Acevedo's duties were "boundless," as he contends. Answer Br. at 22. They argue only that Miami's police chief has broad legal duties to suppress crime and manage the police. In harmony with the Resolution, he had to report interference and alleged misconduct as he did in his Memorandum. The cases Acevedo points to, *Carollo*'s city manager, *Lane*'s director of a youth program, and *Gomez*'s detective, did not concern a municipality's highest law enforcement officer. Unlike those employees, as Miami's police chief, Acevedo was charged by law with "immediate direction and control of the police force," City Charter § 24, and "the prevention, control, and suppression of crime in the city." City of Miami Code § 42-3. These duties are not boundless, but they are broad regarding running the police department and dealing with crime. That is expected for the duties of a police chief.

Acevedo also points to an alleged statement by City Manager Noriega on a call two days after the Memorandum: "So you've gone after them, and better make sure you have a kill shot because if you don't, you better not take it. Maybe it's because you're an outsider it's easier for you." Answer Br. at 24 (discussing Doc. 1 at 24 ¶ 186). Whatever it may mean, this after-the-fact statement is irrelevant to Acevedo's duties as police chief. No matter how he may try to minimize his legal duties for purposes of litigation, he was chief of police, regardless of what anyone else said, and he had the duty to run his department and address criminal misconduct.

8

Though Acevedo mocks the argument that his Memorandum focused on interference with his management, Answer Br. at 26, the Memorandum speaks for itself. It repeatedly discusses interference, with section headings all focused on interference: "Interference with MPD Internal Affairs Division (IAD) investigation"; "Interference with Reform Efforts and MPD Staffing"; and "Interference with and Improper Use of MPD Resources." Doc. 17-3 at 1–8. To resolve this issue of law, the Court should use these actual words of the Memorandum, not after-the-fact characterizations.

Management of the police force and addressing crimes are core functions of the chief of police. As Acevedo himself wrote, his Memorandum arose from "[his] sworn duty is to uphold the rule of law," Doc. 17-3 at 8, and he acted pursuant to that duty as a police chief, not as a private citizen, in reporting to his superiors. As a matter of law, his Memorandum was not protected by the First Amendment.

**B.  The Memorandum's Main Thrust and Purpose Were Not a Public Concern.**

Acevedo has no response to the compelling argument that the form and context of his Memorandum show it was not for a public purpose, although he wrote it for and provided it to his workplace hierarchy amid the City Commission's criticism of his management. Initial Br. at 34–36. Instead, he focuses exclusively on the content of the Memorandum. In doing so, however, Acevedo fails to recognize that the issue is whether its "main thrust" is directed to a public or private concern.

9

*King v. Board of County Comm'rs*, 916 F.3d 1339, 1347 (11th Cir. 2019); *Alves v. Bd. of Regents*, 804 F.3d 1149, 1162 (11th Cir. 2015); *Morgan v. Ford*, 6 F.3d 750, 754–55 (11th Cir. 1993). In resolving this, the Court must determine "whether the purpose of [the employee's] speech was to raise issues of public concern." *Alves*, 804 F.3d at 1167. *See also Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993); *Vila v. Padrón*, 484 F.3d at 1340.

Acevedo also fails to consider the Memorandum in context of the Commission's powers. The Commission has the power to "investigate the financial transactions of any office or department of the city government and the official acts and conduct of any city official, and by similar investigations may secure information upon any matter." City of Miami Charter § 14.

Analyzed this way, the Memorandum does not satisfy the public concern requirement, even if it involves matters of public interest. The main thrust of the Memorandum is a workplace dispute between a police chief and his overseers. Acevedo bristles because city commissioners "have interfered with [his] reform efforts and have interfered with a confidential internal investigation." Doc. 17-3 at 1. Acevedo's Memorandum then reports the "misconduct" of Commissioners in "interfering"—mostly through public meetings[1]—with the police department's

---

[1] In the case of Commissioner Manolo Reyes, *all* of the actions were undertaken from the dais during public commission meetings.

resources and investigations, reducing the police budget, and removing staff positions that Acevedo wanted. *See* Initial Br. at 32–34. A dispute with the Commission about its oversight and adverse comments in public meetings is not whistleblowing.

Though in the course of discussing interference Acevedo raised topics of public interest, that does not change the Memorandum's main thrust. *See, e.g.*, *King*, 916 F.3d at 1347 (medical director's comments about reverse discrimination and public safety did not change the main thrust of speech about interference). Because the main thrust of his Memorandum is Commission interference with the police department it has the power to investigate and fund, and because the form and context show it was not written for a public purpose, Acevedo's speech was not protected by the First Amendment.

## C.    Acevedo Fails to Satisfy *Pickering* Balancing.

The critical factor of *Pickering* balancing misunderstood by Acevedo is that the Miami police chief has a sensitive, confidential, policymaking position, and that alone has an overwhelming weight favoring the government.

"[G]overnment employees who have access to their employer's confidences or who act as spokespersons for their employers, as well as those employees with some policy-making role, are in a special class of employees and might seldom prevail under the First Amendment in keeping their jobs when they conflict with

their employers." *Shahar v. Bowers*, 114 F.3d 1097, 1103 (11th Cir. 1997) (en banc). *See also Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338 (11th Cir. 2013) (reversing and mandating Rule 12(b)(6) dismissal); *Bates v. Hunt*, 3 F.3d 374, 378 (11th Cir. 1993).

Acevedo reluctantly admits that, as police chief, he was in a policymaking role, noting that he "may have developed and implemented certain policies." Answer Br. at 47. He must. Miami's police chief is charged by law with "promulgat[ing] all orders, rules, and regulations for the government of the police force," City of Miami Charter § 24 & Doc. 1 at 39–40, ¶ 275. He also has "immediate direction and control of the police force," City Charter § 24. The police chief thus "serves as the alter ego who executes the policies of a legislative body." *Leslie*, 720 F.3d at 1343.

The police chief's confidential, policymaking role is particularly sensitive because the police department has "a heightened need for order, loyalty, morale and harmony." *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1293 (11th Cir. 2000). Contrary to Acevedo's belief, *see* Answer Br. at 36, "[t]he government's legitimate interest in avoiding disruption does not require proof of actual disruption." *Moss*, 782 F.3d at 622. *See also Connick v. Myers*, 461 U.S. 138, 152 (1983) ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action."); *Bates*, 3 F.3d at 378.

12

Acevedo's response is to focus on a single authority, *Bates*, and argue the case is distinguishable because, in his view, the police chief position is not "political." *See* Answer Br. at 36. Distinguishing one case on a particular fact, however, does not refute the legal point that his policymaking position provides little or no First Amendment protection.

The critical issue is not the position's political nature, but its delegated power to act on behalf of the employer. "The key factor in our decisions that apply a categorical approach is that the employee was empowered by law to act as the alter ego of her employer." *Leslie*, 720 F.3d at 1351. The Court has repeatedly applied this categorical test and held employees with delegated powers were not protected by the First Amendment. *See id.* at 1351 (superintendent of local school district served in policymaking or confidential role under categorical approach because "she was the executive officer on whom the Board relied for the enforcement of its policies"); *Shahar*, 114 F.3d at 1103–04 (staff attorney empowered to "speak, write and act on behalf of the Attorney General and for the State"); *Bates*, 3 F.3d at 378 (governor's assistant delegated power to speak and act on his behalf).

Under this categorical approach applied here, Acevedo was clearly in a policymaking position. The City entrusts the police chief with policymaking for a critical department. Beyond that, Acevedo's Memorandum addressed at least two policy-oriented issues: his investigative treatment of Officer Camacho, and

13

budgeting for police positions, each actively discussed by the Commission before he wrote his Memorandum. *See* Initial Br. at 14–15.

This Circuit has not determined the specific effect of a policymaking role in *Pickering* balancing. *See Leslie*, 720 F.3d at 1347. That itself establishes qualified immunity should apply. The effect, however, ranges from extremely heavy to dispositive of balancing. *See id.* at 1348–49. *See also, e.g.*, *Bates*, 3 F.3d at 378 (holding termination of Governor's assistant was permitted because she held a confidential position, without engaging in further *Pickering* analysis). Acevedo has not provided a single authority showing the claim of a policymaker in a position like his survived *Pickering* balancing.

Acevedo was in the midst of conflict with the Commissioners, including budget conflicts, as reflected by his Memorandum. *See* Initial Br. at 40–41. Under the City of Miami's laws, he categorically held a confidential, policymaking position governing a sensitive department. Under *Pickering*, the City Commission was entitled to terminate his employment.

## II.     Qualified Immunity Defeats Acevedo's Claim.

### A.     No Broad Principle Establishes the First Amendment Protected Acevedo's Memorandum.

Broad abstractions cannot defeat qualified immunity, and no materially similar precedent gave fair warning here. Acevedo does not even argue that materially similar, binding case law shows the individual defendants acted

14

unlawfully. Answer Br. at 45–48. Instead, he exclusively contends he has defeated the individual defendants' qualified immunity by pointing to "a broad statement of principle . . . that clearly establishes a constitutional right". *Id.* at 44 (quoting *Jarrard*, 115 F.4th at 1323–34). That method is only effective, however, where the broad statement applies "'with obvious clarity to the specific conduct in question,' and it must have been 'obvious' to a reasonable [government official] that the pertinent conduct given the circumstances must have been unconstitutional at the time." *Vinyard v. Wilson*, 311 F.3d 1340, 1352 (11th Cir. 2002) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see also Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (discussing the "obvious clarity" requirement and providing several precedents holding its application is rare).

Acevedo fails to satisfy his burden of establishing a broad statement of principle that applies with obvious clarity. He never even specifically articulates what his "broad statement" is. *See* Answer Br. at 45–48. Instead, he discusses the same three cases the individual defendants distinguished in the Initial Brief as materially different than this one. Initial Br. at 45–46.

For example, Acevedo again relies on *Carollo v. Boria*, but that does not carry his burden. *Carollo* did not present any arguable First Amendment issue: the individual defendants did not contest the plaintiff spoke on a matter of public concern; they did not contest *Pickering* balancing; and the speech at issue "did not

have anything to do" with the plaintiff's ordinary duties. *Carollo*, 833 F.3d at 1329, 1331. Still, the Court concluded it could not rely on obvious clarity because of the close merits question regarding whether the employee spoke as a citizen. *Id.* at 1333. The Court instead "determine[d] whether existing law provides fair warning and notice 'in light of the specific context of the case, not as a broad proposition.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *rev'd on other grounds*, *Pearson v. Callahan*, 555 U.S. 223 (2009)). Because the individual defendants did not contest issues of public concern or *Pickering* balancing, and because the speech at issue— reporting violations of campaign financing laws[2]—was clearly outside the plaintiff's ordinary job duties, the Court was able to conclude the individual defendants had fair warning they committed a First Amendment violation.

*Carollo* does provide a broad statement in holding that "it violated the First Amendment to terminate a colleague for speaking about matters of public concern that are outside the scope of his ordinary job duties." 833 F.3d at 1334. That essentially restates the test for First Amendment protection in the employment context, and so it is "at a high level of generality" unworkable in qualified immunity analysis. *See, e.g.*, *id.* at 1333 (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 742 (2011)). Moreover, *Carollo*'s holding does not apply here with obvious clarity.

---

[2] At the same time, the Court held that the plaintiff city manager's alleged reports about "corruption" and other violations failed to state plausible claims that he spoke as a citizen because that speech was not clearly outside of his duties. *Id.* at 1331.

16

Acevedo's Memorandum to report to his superiors was within his broad job duties as a police chief, and raising conflicts about interference with his management and budgeting was not a matter of public concern.

Because Acevedo has failed his burden to defeat qualified immunity, his claims against the Appellant City Commissioners should be dismissed. Where a plaintiff's First Amendment rights as set forth in the pleadings are not clearly established, the court should dismiss the individual claims based on qualified immunity. *See, e.g.*, *Zen Grp., Inc. v. Fla. Agency for Health Care Admin.*, 80 F.4th 1319, 1332 (11th Cir. 2023). A reasonable commissioner might not have known that the Resolution converted Acevedo into a private citizen or that his Memorandum to his superiors about commissioners' interference in the police department had a public purpose. Qualified immunity therefore applies, and dismissal is appropriate.

**B.      Pickering Balancing Does Not Lead to the Inevitable Conclusion the City Commission Could Not Terminate Acevedo as Police Chief.**

This is nowhere near the extraordinary case where *Pickering* balancing inevitably favors the employee. Yet, this Court has repeatedly held that qualified immunity applies in First Amendment retaliation cases "except in the extraordinary case where *Pickering* balancing would lead to the *inevitable conclusion* that the discharge of the employee was unlawful." *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir. 1989) (emphasis added). *See also Camp v. Corr. Med.*

17

*Serv. Inc.*, 400 F. App'x 519, 520–21 (11th Cir. 2010); *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1320 (11th Cir. 2005); *Chesser v. Sparks*, 248 F.3d 1117, 1124 (11th Cir. 2001) (reversing and mandating Rule 12(b)(6) dismissal); *Stanley v. City of Dalton*, 219 F.3d 1280, 1298 (11th Cir. 2000); *Cooper v. Smith*, 89 F.3d 761 (11th Cir. 1996); *Hansen v. Soldenwagner*, 19 F.3d 573, 576 (11th Cir. 1994); *Busby v. City of Orlando*, 931 F.2d 764, 774 (11th Cir. 1991).

Acevedo has not argued, either below or here, that he can satisfy the "inevitable conclusion" standard to defeat qualified immunity. Instead, he contends the *Pickering* analysis does not even apply to qualified immunity in the context of the First Amendment, quoting from a footnote in this Court's split-panel decision in *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1325 n.20 (11th Cir. 2024). But in *Jarrard* the Court's majority held that the plaintiff, a minister serving a jail's volunteer ministry program, was not even an employee for purposes of *Pickering* so its analysis did not apply. *Id.* at 1313. The *Jarrard* Court panel could not overrule the circuit's *Dartland* line of precedent and never claimed to do so, and the case, which did not even involve an employee, is clearly distinguishable.

Acevedo also contends, again applying *Jarrard*, that he can point to a "broad statement of principle"—presumably, his "whistleblower" characterization—to defeat qualified immunity, apparently without satisfying the inevitable-conclusion test. Answer Br. at 49 (61). Again, *Jarrard* does not involve employment and does

18

not apply. In the government employment context where *Pickering* applies, the Court uses the inevitable-conclusion test "[b]ecause no bright-line standard puts the reasonable public employer on notice of a constitutional violation . . . ." *Dartland*, 866 F.2d at 1323. The *Pickering* test is too fact-specific to allow any such broad statement of principle. *See id. See also Bates*, 3 F.3d at 378. Acevedo acknowledges this earlier in his papers. *See* Answer Br. at 35 (quoting *Bates* that a "case-by-case" analysis is required).

Acevedo has never even attempted to satisfy the inevitable conclusion test because he cannot. He was indisputably in a policymaking role and governed the police department which requires heightened order and stability, so his position allows little or no First Amendment protection. He sent his Memorandum amid his personnel dispute, after and in reaction to a Commission meeting eliminating police positions he wanted, Doc. 1 at 20–22, ¶¶ 152–66, and his Memorandum complains at length about the Commission's budgeting at that meeting, Doc. 17-3 at 4–7. The context thus shows Acevedo disputed the City Commission's authority. Such circumstances do not inevitably lead to the conclusion that the City Commission was powerless to remove him.

### C. The Pleadings Establish a Lawful Motivation So Qualified Immunity Applies.

Acevedo's Complaint has no plausible claim to defeat qualified immunity because the Complaint shows the City Commission had a lawful motivation. *See*

19

Initial Br. at 49–51. The Complaint states that before Acevedo wrote his Memorandum, in open meetings, the commissioners criticized his investigation of Police Officer Luis Camacho of the Sergeant-at-Arms Detail, Doc. 1 at 14–16 ¶¶ 101–18, and eliminated positions he created for his Houston colleague Heather R. Morris and others, *id*. at 20–21, ¶¶ 147–64. Ultimately, the City Commission's five members unanimously terminated Acevedo's employment after an evidentiary hearing with four witnesses. *Id.* at 29–30, ¶¶ 219–20, 226. The Complaint has no rationale for why the two non-party commissioners voted to terminate Acevedo. Below, Acevedo admitted those commissioners "may have had proper motivations." Doc. 37 at 17. The pleadings thus show the Appellant City Commissioners had motives to terminate Acevedo unrelated to his protected speech—the same legitimate reasons of the two nonparty commissioners.

Acevedo contends the two non-party commissioners' motivations "do not speak to the [Appellant City] Commissioners' individual motivations," Answer Br. at 41, but "[f]or qualified immunity purposes, the subjective motivation of the defendant-official is immaterial." *Hansen v. Soldenwagner*, 19 F.3d 573, 578 (11th Cir. 1994). The votes of those two non-party commissioners, with the other allegations of the Complaint, show that legitimate reasons existed for Acevedo's termination. Thus, under a mixed-motive analysis, his Complaint does not state a plausible claim on its face.

20

Beyond this, the Suspension Memorandum is central and indisputably authentic, so the Court may consider it on the pleadings, and it confirms a lawful basis. *See* Initial Br. at 16–17 & n.4. The Suspension Memorandum supplies eight reasons for Acevedo's termination, including the position he gave his Houston colleague Morris that the Commission eliminated before he wrote his Memorandum. *Id.*

Although Acevedo wants to prevent consideration of the Suspension Memorandum, his arguments are unfounded. Documents are properly incorporated at the pleadings stage if they are central to the claims and their authenticity is undisputed. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298–1300 (11th Cir. 2024); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). On that basis, this Court has approved the use of employment termination letters supplied by defendants on motions to dismiss. *Chambers v. Cherokee Cnty.*, 741 F. App'x 640, at *2 n.1 (11th Cir. 2018 (11th Cir. Jul 30, 2018); *Wall-Desousa v. Florida Dep't of Highway Safety*, 691 F. App'x 584, *18 n.3 (11th Cir. 2017) (dismissal based on mixed motive).

Neither here nor below has Acevedo contested the authenticity of the Suspension Memorandum. He argues instead that it is not central to his claims, but undoubtedly it is, as it was in *Chambers* and *Wall-Desousa*. The Complaint specifically identifies and alleges facts about the Suspension Memorandum, Doc. 1 at 28–29, ¶¶ 212–15, and claims the suspension itself is actionable, *id.* at 41, ¶¶ 283–

86. The Suspension Memorandum is also an official act serving as the charging document for the City Commission's hearing. *See* City of Miami Charter § 26 (upon suspension "the city manager shall forthwith certify the fact, together with the cause of suspension, to the commission who within five (5) days from the date of receipt of such notice, shall proceed to hear such charges and render judgment thereon, which judgment shall be final"). That hearing led to Acevedo's termination, which forms another part of his alleged damages. Doc. 1 at 29–30, 49 ¶¶ 219–20, 226, 330.

Despite this, Acevedo argues the Suspension Memorandum is not central to his claims, contending it is not "a necessary part of [the plaintiff's] effort to make out a claim." Answer Br. at 43 (quoting *Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018) (cleaned up)). He contends that he alleged the Suspension Memorandum was pretextual, and so "entitled to no credit whatsoever." *Id.* But the Suspension Memorandum is central, even if he denies its allegations, because it must be considered in the resolution of his claim.

The Court made this legal point clear in *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005), the case relied on in *Basson* that Acevedo cites. There, the defendant in an antitrust case sought consideration of a "standard form dealership contract" attached to a Rule 12(b)(6) motion. The plaintiffs argued the contract wasn't "central," but the Court disagreed. Because the plaintiffs' antitrust theory hinged on whether U-Haul's dealer relationships were sham or genuine agency

22

relationships, the dealership contract went to "the very heart" of the claim. *Da*y, 400 F.3d at 1276.

Based on the Court's reasoning of *Day* and its application under similar circumstances in *Chambers* and *Wall-Desousa*, the Suspension Memorandum should be considered for the motion to dismiss. Like the plaintiffs in those cases, Acevedo disputes the contents of the Suspension Memorandum, though not its genuineness. Regardless of that dispute, it is central—it forms the basis of his suspension and ultimate termination. This does not mean it is Acevedo's burden to disprove the Suspension Memorandum's allegations at this stage. It only shows the charges he faced. However, once coupled with the pleaded facts that after an evidentiary hearing two city commissioners concluded they had legitimate reasons to terminate Acevedo and qualified immunity's requirement that the record cannot show any legitimate reason for his termination, the Suspension Memorandum confirms Acevedo does not have a plausible claim.

Beyond this, Acevedo has not provided facts sufficient to show all three Appellant City Commissioners had an illegal motive. In considering the motion to dismiss, the Court must strip the Complaint of its conclusory allegations and focus on the facts specific to each defendant. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681–83 (2009). Acevedo's Memorandum and factual allegations call Appellant City Commissioner Reyes to task only for his public-meeting views on Officer Camacho

23

and budget decisions about the police department. *See* Initial Br. at 8–10. Both are matters of legislative immunity, *see infra* § III, and neither constitutes corruption. Because Acevedo's termination was a board decision, the failure to establish the exclusively illegal motivation as to any of the Appellant City Commissioners defeats the claims as to all. Termination was by board vote, so the plaintiff must tie retaliatory motive to a majority of votes; otherwise, causation fails. *See Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 284–87 (1977); *Stimpson v City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999). Acevedo has no response to this.

Hoping at least for delay, Acevedo wants the Court to defer considering the mixed-motive issue. But he ignores the requirements of qualified immunity, which should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As in *Iqbal* and *Wall-Desousa*, the Complaint should be dismissed on the pleadings based on qualified immunity.

## III.   Legislative Immunity Defeats Acevedo's Claims.

Absolute legislative immunity bars the voting, budgeting, speechmaking, and investigations that feature throughout Acevedo's Complaint.

24

Acevedo asserts that "'[a]bsolute legislative immunity extends only to actions taken within the sphere of legitimate legislative activity.' *Brown v. Crawford Cnty., Ga.*, 960 F.2d 1002, 1011 (11th Cir. 1992) (internal quotation marks omitted)." Answer Br. at 57. That legislative sphere, however, is broad. "Acts such as voting, speech making on the floor of the legislative assembly, preparing committee reports, and participating in committee investigations and proceedings, are generally deemed legislative and, therefore, protected by the doctrine of legislative immunity." *Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) (internal citations omitted). Legislative privilege also "protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts*." *United States v. Brewster*, 408 U.S. 501, 525 (1972) (emphasis added); *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015) (quoting and applying *Brewster*). Much of the Complaint contains allegations about the Appellant City Commissioners' voting, speech-making, and discussions during commission meetings. *See* Initial Br. at 55–56.

Removing these allegations as legislative immunity requires, Acevedo has no claim. Focusing on the allegations specifically regarding Commissioner Reyes, every one involves his voting and statements during commission meetings. *See* Doc. 1 at 15, 16, 17, 19, 21, 27 ¶¶ 114, 117, 127, 142, 153, 157, 161, 163, 202, 205. Similarly, the only specific statements about Commissioner Reyes in the

25

Memorandum concern his conduct during commission meetings. *See* Doc. 17-3 at 2–3 (June 24, 2021 meeting discussing Officer Camacho) & 5–6 (September 13, 2021 budget meeting). Without these allegations, there is no claim against Commissioner Reyes. Nothing shows he had an illegal animus.[3] He is situated just like the two non-party commissioners, voting to terminate Acevedo after an evidentiary hearing.

So, too, the allegations concerning Commissioners Carollo and Diaz de la Portilla involve conduct in the legislative sphere. Whether having the effect of casting Acevedo in a bad light or merely expressing fundamental policy disagreements with a plainly incapable and incompetent police chief, those commissioners' actions taken as municipal elected policymakers cannot serve, even in part, as a basis for Acevedo's retaliation claim. Unmoored from the legislative context, Acevedo's conclusory assertion the commissioners harbored personal grievances against him does not eliminate the legislative immunity protecting the Appellant City Commissioners from suit.

Legislative immunity thus defeats Acevedo's claim. Causation based on the decision of a board like the commission requires proving the majority had an illegal motive in making its employment decision. *See Mt. Healthy*, 429 U.S. at 284-87;

---

[3] Even with the allegations involving legislative activity, little shows Commissioner Reyes had an illegal animus. *See* Initial Br. at 8-10.

26

*Stimpson*, 186 F.3d at 1331. Acevedo cannot establish that. Accordingly, legislative immunity also warrants dismissal.

## CONCLUSION

For the foregoing reasons, the Court should reverse and remand for dismissal of the claims against the Appellant City Commissioners on qualified and legislative immunity grounds.

Dated: September 22, 2025

Respectfully submitted,

By: /s/ *Thomas A. Ronzetti*
**THOMAS A. TUCKER RONZETTI**
tr@tuckrlaw.com
**TUCKER RONZETTI, P.A.**
5760 SW 46th Terrace
Miami, FL 33155
Tel: 305.546.4638
*Counsel for Appellant Diaz de la Portilla*

**BENEDICT P. KUEHNE**
**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3650
Miami, FL 33131
Tel: 305.789.5989
Ben.Kuehne@KuehneLaw.com
Efiling@KuehneLaw.com
*Counsel for Appellant Carollo*

**JAVIER A. LOPEZ**
**VEDDER PRICE (FL), LLP**
600 Brickell Avenue, Suite 1500
Miami, FL 33131
Tel: 786.741.3177
jlopez@vedderprice.com
*Counsel for Appellant Diaz de la Portilla*

**FRANK QUINTERO, JR.**
FQuintero@Quinterolaw.net
**QUINTERO BROCHE &**
**FONSECA-NADER, P.A.**
75 Valencia Avenue, Suite 800
Coral Gables, FL 33134
Tel: 305.446.0303
*Counsel for Appellant The Estate of Manolo Reyes*

**JOSE M. QUIÑON**
JQuinon@Quinonlaw.com
**JOSE M. QUIÑON, P.A.**
75 Valencia Avenue, Suite 800
Coral Gables, FL 33134
Tel: 305.858.5700
*Counsel for Appellant The Estate of Manolo Reyes*

28

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. This document complies with the word limit of Federal Rule of Appellate Procedure 32(a(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,206 words.

By: /s/ *Thomas A. Ronzetti*
Thomas A. Ronzetti

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 22, 2025, I caused to be electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or parties of interest via either transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  */s/ Javier A. Lopez*
Javier A. Lopez